THOMAS J. JARMAN, executor,

*v*.

ABRAHAM FREEMAN.

[Submitted and decided April 10th, 1911.]

1. Where a deed grants the use in common of a passageway extending on one side of the lot granted between the lot granted and the land of the grantor, as a private way for travel and drainage, and the grantor reserves the fee, the grantee cannot enlarge the easement to accommodate land other than that to which it is appurtenant, and has only the right to enjoy the estate granted, while the grantor, who owns the fee in the way, and whose rights are not founded in grant, may use his property for any purpose consistent with the full enjoyment of the easement, but he cannot extend the use of his way to other lands so as to impair the easement which he has granted.

2. The owner of the fee in a strip of land, who has granted an easement of way therein may suspend structures above the way, or mine under it, if he does not interfere with the easement he has granted.

3. Where the owner of a lot of land has granted a part of it, with an easement of way in common in an alley extending the whole distance between the part granted and the remaining part of the whole lot, the grantee to pay a proportionate part of the expense of keeping the alley in repair, a reservation by the grantor in a conveyance of the remainder of the original lot, of a common right of way in the alley for the benefit of other land of the grantor adjoining the original lot on the side of the blind end of the alley, and a reservation in a subsequent conveyance of this lot of the same right of way, tend to increase the burden of repair, and are void as against the first grantee in so far as they interfere with the full enjoyment of his easement.

4. Complainant, who was the grantee of an easement of way and drainage in common for the benefit of himself and the owners and occupiers of the lots of the grantor laterally adjacent to the way, who stood by during the erection of a warehouse by a grantee of the first grantor on a lot adjacent to the blind end of the way, and who necessarily had knowledge that the owner of the warehouse had no other right of way than the way in use and that he intended to use it as a means of access, and who himself contributed to the owner's expenditures by taking a contract for work on the building, is estopped in an action to enjoin the owner's use of the way after the building has been completed.

On bill for injunction. Hearing on return of order to show cause for preliminary injunction.

The bill is filed to restrain defendant from making use of a certain alley for purposes of travel to and from defendant's land.

The alley which complainant seeks to protect from use by defendant came into existence in the following manner: In the year 1898 one Kelly owned a lot of land at the southwest corner of Atlantic and New York avenues, Atlantic City. The lot was rectangular in form and extended one hundred feet along Atlantic avenue and one hundred and fifty feet along New York avenue. In the year named, Kelly sold to complainant's devisor the rear, or southerly, forty feet of the lot. The deed of conveyance from Kelly to complainant's devisor granted not only the tract above referred to as extending forty feet in frontage on New York avenue, but also the right to use as an alley a strip of land adjacent thereto on the northerly side thereof, said strip of land being ten feet in front, or width, on New York avenue and extending in depth of that uniform width the same distance as the land conveyed—one hundred feet. The language of the deed with reference to the alley is as follows:

"Together with the free and common use, right, liberty and privilege of an alley ten feet in width, intended to be laid out and opened by the said grantor, parallel with and one hundred feet southward from the south line of Atlantic avenue, and extending westward from said New York avenue one hundred feet in depth, in common with the owners, tenants, and occupiers of the lots of ground of the said grantor and the said grantee, or their assigns, bounding thereon as and for a passageway and water course, at all times hereafter, forever, subject, however, to the payment of a proportionate part of the expense of keeping the said alley in good order and repair at all times hereafter, forever."

At the date of this conveyance Kelly owned no land in the vicinity except the lot already referred to, the rear portion of which he conveyed to complainant's devisor in the manner already stated. After this conveyance was made, Kelly and complainant's devisor caused the alley to be paved at their joint expense. In the year 1901 Kelly purchased from one Folwell a lot of land adjacent to and westerly of the lot originally owned by him. The lot so purchased extended fifty feet in front on Atlantic avenue and one hundred and fifty feet in depth. It will thus be observed that the rear part of the lot purchased

30

by Kelly from Folwell was adjacent to the land then owned by complainant's devisor, and also adjacent to what is called the "blind end" of the alley. In the year 1908 Kelly sold to the Atlantic Safe Deposit and Trust Company—not parties to this suit—the remaining portion of the original corner lot, that is, one hundred feet on Atlantic avenue and one hundred feet on New York avenue. In that deed of conveyance, Kelly's rights in the alley were conveyed in the following language:

"Together with all the right, title and interest of the said party of the first part hereto (Kelly) in the ten feet wide alley in the rear of said premises, to the depth of one hundred feet westwardly from New York avenue, reserving thereout. however, unto the grantor, his heirs and assigns, the use, right. privilege and liberty of all of said ten feet wide alley, as and for a passageway and water course, and for ingress and egress thereover, at all times hereafter, forever, for the benefit of the land of said grantor adjoining the land herein described on the west side thereof."

On January 25th, 1911, Kelly conveyed to defendant the lot which he had theretofore purchased from Folwell, and in the deed of conveyance therefor granted to defendant the use of the alley by the following language:

"Together with the use, right, privilege and liberty in common with others, of, in and to that certain ten feet wide alley or passageway known as Sherman Place, leading eastwardly from said lands and premises to New York avenue the northerly line of which runs parallel with and one hundred feet southerly from the southerly line of Atlantic avenue, as and for a passageway and water course, and to have ingress and egress thereover, hereafter forever."

About seven years ago, and when Kelly was the owner of the lot now owned by defendant, buildings were by him rebuilt on the front part of the lot. These buildings face on Atlantic avenue and exclude all means of access to the lot from Atlantic avenue, and since their erection the alley has been uniformly used by the occupants of these buildings for egress and ingress without objection from anyone. Defendant has recently erected a large warehouse on the rear of his lot. This warehouse has been constructed with special reference to the use of the alley for the receipt of goods; its only entrance is adjacent to the

westerly end of the alley, and goods cannot be received in it
except from the end of the alley. This warehouse now contains
about twenty thousand dollars worth of goods which have been
received through the alley. The evidence before the court at
this time sufficiently discloses that complainant necessarily knew
that the warehouse of defendant was being constructed for the
purpose of receiving goods through the alley in question, and
made no protest against such use until the present bill was filed.
It also appears that complainant was employed to install the
plumbing in the warehouse and that he performed the work.

The foregoing facts have been made to appear at the return
of an order to show cause for a preliminary injunction to re-
strain defendant from using the alley pending final hearing of
the suit.

*Messrs. Chandler & Robertson,* for the complainant.

*Messrs. Bourgeois & Coulomb,* for the defendant.

LEAMING, V. C.

From the above statement of facts it will be observed that the
deed from Kelly to complainant's devisor was operative to create
an easement of way and drainage appurtenant to the land con-
veyed. The terms of the grant sufficiently define the character,
extent and purpose of the easement; these terms unmistakably
disclose that it was intended as a private way for travel and
drainage for the benefit of the land laterally adjacent to the
alley, with the burden of maintenance equally imposed upon the
owners of the lands on either side of the way. The grantor re-
tained the fee of the land over which the way was to pass. The
grantee, as owner of the dominant tenement, thus became en-
titled to the enjoyment of the easement for the benefit of his
land, subject to an equal right of enjoyment in behalf of the
adjacent land of the grantor. These rights of the grantee have
passed to complainant by the devise of the dominant tenement
to him.

Under the conditions stated, little doubt can be said to exist
touching the respective rights of the owners and the privileges

which they may enjoy with reference to the way. It is in entire harmony with both reason and authority that the owner of such dominant tenement should not be privileged to extend or enlarge the easement of way to accommodate land other than that to which it is appurtenant; he is only privileged to enjoy the estate granted, and such extension would be clearly outside the terms of the grant. *Davenport* v. *Lamson, 21 Pick. (Mass.) 72; Hoosier Stone Co.* v. *Malott, 130 Ind. 21; Louisville, N. A. & C. R. Co.* v. *Malott, 135 Ind. 113; Albert* v. *Thomas, 73 Md. 181.* The rights of the owner of the servient tenement are necessarily less limited. He is the owner of the fee in the land over which the way passes. His rights are not founded in grant, and he may, in consequence, use his property in any manner and for any purpose. consistent with the full enjoyment of the easement. These rights have been held to include the right to suspend structures above the way and to mine under the way. But he cannot use his property in a manner to materially impair or interfere with the easement which he has granted, and the owner of the easement may prevent such use. *Atkins* v. *Boardman, 2 Met. (Mass.) 457, 467; Proprietors Locks, &c.,* v. *N. & L. Ry. Co., 104 Mass. 1, 11; Herman* v. *Roberts, 119 N. Y. 37; Shivers* v. *Shivers, 32 N. J. Eq. (5 Stew.) 578.* It necessarily follows that the owner of the servient tenement cannot lawfully extend the use of the way to other lands when such added use is operative to interfere with the full enjoyment of the easement in behalf of the dominant tenement, or to increase the burden of repair which accompanies the easement.

In the present case, I think it reasonably manifest that the extension of the privilege of use of the way in question to the property now owned by defendant is operative to interfere with the full enjoyment by complainant of the easement which is appurtenant to his land; while the injury may be but slight, it, nevertheless, seems apparent that to extend the use of the way for the benefit of the land in question will tend to interfere with the full exercise by complainant of the rights vested in him under his grant, and will also increase his burden of repair. In this view it follows that the reservation in behalf of Kelly's newly acquired land, contained in the deed from Kelly to the

trust company, and that the grant of the right to use the way, contained in the deed from Kelly to defendant, are void as against complainant, in so far as they are operative to interfere with the full enjoyment of complainant's rights under the easement. The case of *Greene* v. *Canny, 137 Mass. 64,* is in point. Touching the effect of such a grant it is there said (at *p. 68*) : "To grant others than the owner of these lots rights of way would be to grant obstructions of those which he had already granted. It would add to the expense of those who were to keep the way in repair, while their own enjoyment would be less convenient and beneficial, as it might be more or less interfered with by the enjoyment of others." And on page 70 it is held that the ownership of the fee in the way confers no right to extend the privilege to use the way to persons other than the persons for whose use the way was created.

But I think it here unnecessary to positively determine whether the use of the way by defendant will materially interfere with the full enjoyment by complainant of his easement, for the evidence now before this court discloses sufficient doubt to exist, touching complainant's right to equitable relief, to necessitate the refusal of a preliminary writ.

It is a familiar equitable maxim that where a man has been silent when in conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent. In *Summer* v. *Seaton, 47 N. J. Eq.* (*2 Dick.*) *103, 111,* Vice-Chancellor Pitney, quoting from Chancellor Kent, applies this maxim as follows :

"There is no principle better established in this court, nor one founded on more solid foundations of equity and public utility, than that which declares that if one man, knowingly, though he does it passively, by looking on, suffers another to purchase or expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel."

In the present case it is manifest that defendant erected his warehouse in the full belief that he would be privileged

to use the alley in question. The warehouse is located at the end of the alley and is so constructed that it can only be used from the alley. In observing the building so located and constructed, complainant could not fail to know that it was designed for use from the alley; he was employed to work on the building, and his knowledge in this respect cannot be doubted.

Under such circumstances it was clearly his conscientious duty to apprise defendant of his objection to the use of the alley, and his failure to do so should be operative to deny to him the relief now sought from a court of conscience for the protection of the legal right, the invasion of which his passive acquiescence necessarily encouraged. This passive acquiescence upon the part of complainant in the expenditures so made by defendant, with special reference to the use of the alley, has undoubtedly been measurably instrumental in the consummation of the present conditions, and in that view it is not in accordance with equitable principles to now extend to complainant the aid of this court in the enforcement against defendant of the legal rights here asserted. It is entirely immaterial that the expenditures were being made by defendant on his own land; the warehouse which defendant was erecting was being erected in a manner that made it apparent to anyone that its contemplated use was through the alley in question. Complainant remained silent when duty, candor and fairness required him to speak, and his silence appropriately and necessarily gave encouragement to defendant in the course he was pursuing; complainant not only remained silent but actively contributed to defendant's expenditures by performing labor upon the building, at a time when the building was so far advanced in its construction that complainant could not fail to fully appreciate that the building was being constructed for the special purpose of utilizing the alley as a means of access to New York avenue. The acquiescence of complainant in the use of the alley by defendant for several years prior to the time the warehouse was erected, also naturally tended to lead defendant to the belief, which he clearly entertained, that the alley could be used by him.

I will advise an order denying equitable relief.