THOMAS J. JARMAN, executor, &c., complainant-respondent,

*v.*

ABE FREEMAN, defendant-appellant.

[Argued June 26th, 1912.   Decided November 20th, 1912.]*

*Messrs. Bourgeois & Coulomb,* for the appellant.

*Messrs. Chandler & Robertson,* for the respondent.

*This decision was inadvertently omitted from the official reports at the time it was decided.

The opinion of the court was delivered by

TRENCHARD, J.

This appeal brings up for review a decree of the court of chancery, directing that an injunction issue restraining the defendant from using a certain alley called "Sherman Place," leading to his premises, in the city of Atlantic City.

The alley in question extends from the westerly side of New York avenue a distance of one hundred feet to the easterly line of defendant's premises, and is paved with brick. The complainant owns the land along the southerly side of the alleyway for a distance of one hundred feet.

The bill was filed by Jarman to restrain Freeman, the defendant, from using this alleyway. Upon a preliminary application relief was denied, because the learned vice-chancellor then thought that "complainant's conduct had induced the defendant to erect his warehouse at the end of a certain alley in the belief that he would be permitted by complainant to use the alley." *78 N. J. Eq. 464.* Upon the final hearing an injunction was issued according to the prayer of the bill, it being then, in the opinion of the vice-chancellor, "established as a fact that defendant erected his warehouse with full knowledge that complainant would contest any effort upon the defendant's part to use the alley."

In order to intelligently discuss the propriety of the award of the injunction, it will be necessary to relate briefly the history of the alley.

The land owned by the complainant and the land traversed by the alley are part of a plot of land one hundred feet in width on the south side of Atlantic avenue and one hundred and fifty feet in depth on the west side of New York avenue, which was formerly owned by Mrs. George Kelly. Her title thereto descended and became vested in John L. Kelly. John L. Kelly and his wife, on June 27th, 1898, conveyed to Mary C. Jarman, the predecessor in title of the complainant, a portion of that land, being forty feet in width on New York avenue, the beginning corner being one hundred and ten feet south of the southerly line of Atlantic avenue. The deed from Kelly to Jarman contained the following grant:

"Together with the free and common use, right, liberty and privilege of an alley ten feet in width intended to be laid out and opened by the said grantor, parallel with and one hundred feet southwardly from the south line of Atlantic avenue, and extending westwardly from said New York avenue one hundred feet in depth, in common with the owners, tenants and occupiers of the lots of ground of the said grantor, and the said grantee, or their heirs, bounding thereon, as and for passageway and water course, at all time hereafter forever; subject, however, to the payment of a proportionate part of the expense of keeping said alley in good order and repair at all times hereafter forever."

On January 21st, 1901, David C. Folwell et al., conveyed to John L. Kelly, the property now owned by the defendant, being thirty-nine feet six inches in width on the south side of Atlantic avenue by one hundred and fifty feet in depth, the beginning corner being one hundred feet west of the westerly corner of New York and Atlantic avenues.

On December 20th, 1908, John L. Kelly conveyed to the Atlantic Safe Deposit and Trust Company a block of land situate at the southwest corner of Atlantic and New York avenues, being one hundred feet in width on Atlantic avenue by one hundred feet in depth on New York avenue and extending to the northerly line of the ten-foot-wide alley created in the deed to Jarman. In this deed Kelly granted to the trust company his right in said ten-foot-wide alley in the following language:

"Together with all the right, title and interest of the said party of the first part hereto in the ten feet wide alley on the rear of said premises, to the depth of one hundred feet westwardly from New York avenue, reserving thereout, however, unto the grantor, his heirs and assigns, the use, privilege and liberty of all of said ten feet wide alley, as and for a passageway and water course thereover, at all times hereafter forever, for the benefit of the lands of said grantor adjoining the lands herein described on the westerly side thereof."

The lands referred to as being on the westerly side of the alley in the grant to the trust company are the lands now owned by the defendant, Freeman, for on January 25th, 1911, John L. Kelly and his wife, conveyed to the defendant the plot of land which he had theretofore purchased from Folwell.

In this deed to Freeman, Kelly granted to Freeman the right to use said ten-foot-wide alley in the following language:

"Together with the use, right, privilege and liberty in common with others of, in and to that certain ten feet wide alley or passageway known as Sherman Place, leading eastwardly from said lands and premises to New York avenue, the northerly line of which runs parallel with and one hundred feet southwardly from the southerly line of Atlantic avenue, as and for a passageway and water course, and to have ingress and egress thereover hereafter, forever."

The vice-chancellor seems to have regarded the foregoing as the only material facts in the history of the title of the alley. But the record presented here for review contains other material matters as we shall hereinafter point out. So regarding the situation, he proceeded in his conclusions to say: "The evidence discloses that the use which the defendant has been making of the alley, and which he proposes to continue to make of it, is under claim of right to use it in such manner and at such times as his convenience and business needs shall occasion for the purpose of hauling goods to and from his warehouse." Continuing he says: "It is now manifest that the continued use of the alley by the defendant for the purpose of hauling goods to and from his warehouse will not only interfere with the full enjoyment by the complainant of the easement as contemplated by the grant, but will also necessarily increase his burden of repair. The grant to complainant vests in him the right to use the alley as a way for the benefit of his adjacent land at any time; this right is in common with and is to be exercised in connection with a similar right to use of the alley by the owner of the fee for the benefit of his adjacent land. It follows that the right of use of the alley thus vested in complainant is only restricted by the similar right of the owner of the fee, and any extension of the use of the alley by the owner of the fee for the benefit of other lands is necessarily operative as a restriction of complainant's privileges co-extensive with the magnitude of the extension, and the burden of repair is in like manner increased by the extended use."

Whether, if we limited our consideration to such facts as the vice-chancellor seems to have limited his, we should reach the same conclusion, it is not now necessary to determine.

We find the following matters of fact disclosed by the

proofs, and the admissions of counsel, which we think must be met before this decree can be affirmed.

The proofs presented to us show that the fee in the alley in question had been dedicated to the city of Atlantic City as and for a public street and has been accepted by the city.

On July 3d, 1911, the Atlantic Safe Deposit and Trust Company (the owner of the fee of the alley in question) by deed granted and dedicated the alley in question (describing it by metes and bounds) to the city of Atlantic City, "as and for a public alley, street or highway, for all persons, at all times, freely to pass and repass on foot or with vehicles, animals, loads or otherwise, to, along, over and upon the same."

There is among the exhibits returned to us a resolution accepting this dedication apparently passed by the city council of Atlantic City, as follows:

"*Whereas*, it is to the interest of Atlantic City that the ten feet wide alley off of New York avenue, and one hundred feet southerly of Atlantic avenue, thence extending westerly parallel with Atlantic avenue and one hundred feet distant therefrom, a distance of one hundred feet, should be under municipal control, and *whereas*, Atlantic City, at public expense has for a number of years past lighted said alley, and *whereas*, the owners of the legal fee to the land in said alley have conveyed and dedicated the same to Atlantic City, by deed bearing date the third day of July, A. D. nineteen hundred and eleven, *therefore, be it resolved:* That Atlantic City accept such dedication, and hereafter maintain said alley as one of the public streets of said city."

Proceeding now to a consideration of the effect of this proof we think there can be no question that the city of Atlantic City, as trustee for the public, had a right to accept the dedication of the lands in question as and for a public street. *Atlantic City* v. *Associated Realties Corp., 73 N. J. Eq. 721; Atlantic City* v. *Atlantic City Steel Pier Co., 62 N. J. Eq. 139.*

The city having accepted such dedication, the complainant's private right of way granted to him by Kelly, became merged in the public easement, or was suspended thereby. *Dodge* v. *Pennsylvania Railroad Co., 43 N. J. Eq. 351.*

In the present case, by the consummation of the dedication, the complainant has been relieved of the burden "of a pro-

portionate part of the expense of keeping said alley in good order and repair" imposed in and by the grant to him.

Now the defendant, as a member of the general public, and as the owner of lands abutting the interior end of the alley, has a privilege of passage and use of this public highway not incongruous with the purpose for which it was created. That right we think this injunction denied him. He was enjoined from using the alley for the purpose of hauling goods to and from his warehouse abutting the interior end of the alley.

Of course everyone using an easement, in common with others, is bound to so regulate his own use of the common right that he does not unreasonably interfere with other persons in their enjoyment of it. *Camden, &c., Railway Co.* v. *United States Cast Iron Pipe, &c., Co., 68 N. J. Eq. 279.* And for the unauthorized obstruction of a public highway there is ample remedy, ordinarily by indictment (*Attorney-General* v. *Heishon, 18 N. J. Eq. 410*), and by injunction in a proper case. *Morris and Essex Railroad Co.* v. *Prudden, 20 N. J. Eq. 530.* But this case does not proceed upon the theory of an unauthorized obstruction of the public highway, nor is there any adequate proof of it.

The only hesitation we have in reversing the decree below arises because the colloquy between court and counsel when the dedication deed was put in evidence, indicated that the true significance of the proof was not pressed upon the attention of the vice-chancellor.

It seems that neither the dedication nor the acceptance had occurred at the time the bill was filed. It appears that the deed of dedication had been executed to the city at the time the answer was filed, and it was set up therein, and that it had been accepted before the taking of proof was concluded, for the resolution of acceptance is returned with proofs. It thereby appears that the dedication had been accepted by the city before the order under review was made. Moreover we find this admission in the printed brief of counsel for defendant: "At this time *the owner of the fee has conveyed the right of the fee to the city and on January 8th, 1912, the city*

*accepted the grant."* By reference to the order awarding the injunction we find that it is dated April 2d, 1912.

Since, therefore, between the time of the filing of the answer in the court below and the date of the decree under review, the alley in question had been dedicated and accepted as a public street, we think the injunction should not issue.

The result is that the decree under review will be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY, JJ. 12.