HENRY S. HOWLAND, complainant-respondent,

*v.*

PAULINE F. ANDRUS, defendant-appellant.

[Submitted December 9th, 1912. Decided March 3d, 1913.]

1. Complainant purchased an interior lot *fronting on Wildwood avenue* by deed containing a covenant that the building to be erected thereon should "be so located that the front line thereof shall not be nearer than sixty feet to the street line measured at right angles thereto," and his grantor covenanted that he would "not convey any of the adjoining lots except by deed containing the same restrictions as above recited." Defendant, with actual notice of such covenants, purchased from the same grantor two lots at the corner of Wildwood avenue and Park street, *fronting on Park street,* and abutting in the rear on complainant's lot. Complainant knew, and the map, which was a part of the public records affecting the whole tract, showed that defendant's lots *fronted on Park street.—Held,* that the question whether or not the covenant was violated by defendant by the erection of a building nearer than sixty feet to Wildwood avenue is not so clear that a court of equity will aid in its enforcement.

2. In cases where the right of a complainant to relief by the enforcement of a restrictive covenant is doubtful, to doubt is to deny.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Emery, whose opinion is reported in *80 N. J. Eq. (10 Buch.) 276.*

*Mr. Edwin B. Goodell* and *Mr. John R. Hardin,* for the appellant.

*Messrs. Sommer, Colby & Whiting (Mr. Frank H. Sommer* on the brief), for the respondent.

The opinion of the court was delivered by

TRENCHARD, J.

The bill in this case was filed by Henry S. Howland against Pauline F. Andrus, to enjoin an alleged violation of a building

line restriction. The court of chancery awarded an injunction and the defendant appeals.

It appears by the pleadings and evidence that Joseph Bardsley was the owner of a tract of land in the town of Montclair, lying between Park street on the east and Valley road and North View avenue on the west, being about nine hundred feet in length by five hundred feet in width. He laid out the land in building lots, with a street called Wildwood avenue through the middle of the tract from east to west. On June 1st, 1903, Bardsley conveyed Wildwood avenue to the town by a deed dedicating it as a public street. This deed, duly recorded, referred to a map attached, which showed the lots located on both sides of the avenue. The map also showed that these lots mostly fronted one hundred feet on Wildwood avenue, and were about two hundred and twenty feet in depth. Some of them, however, fronted on Park street, and some on Valley road and North View avenue. South of Wildwood avenue two lots fronted on Park street and abutted on the adjoining Wildwood avenue lot. These two lots were each about one hundred and twelve feet in width and about two hundred and eight feet in depth. There was a similar arrangement of the lots on Park street north of Wildwood avenue and a somewhat similar arrangement of lots on the other end of the tract.

Complainant and defendant own adjoining lots which they purchased from Bardsley. Complainant purchased March 15th, 1906. His lot is on the southerly side of Wildwood avenue two hundred and eight feet two inches west of Park street. The defendant purchased October 31st, 1910. She purchased two lots on Park street having their rear abutting on complainant's land.

The map attached to and made a part of the deed to the town of Montclair was recorded June 4th, 1903, and was a matter of record at the time complainant bought his lot. The complainant testified that he had not seen the map but knew of its existence and knew that defendant's lots fronted on Park street. Complainant's deed contained the following restrictions:

"This conveyance is made, delivered and accepted under and with the express stipulation and agreement, and the party of the second part, for

himself, his heirs and assigns, does covenant and agree to and with the parties of the first part, their heirs, executors, administrators and assigns, that the property hereby conveyed shall be used for residential purposes only; that not more than one dwelling to cost not less than nine thousand dollars when erected, shall be erected on said lot, and to be so located that the front line thereof shall not be nearer than sixty feet to the street line measured at right angles thereto; that no outbuilding shall be erected thereon whose front line shall be nearer the street than is the rear line of the dwelling, and further, that this agreement shall run with the land and be in full force and effect for the term of twenty-five years from the date hereof."

The deed also contained the following agreement on the part of the grantor:

"And the parties of the first part hereby agree that they will not convey any of the adjoining lots except by deed containing the same restrictions as above recited."

The deed to the defendant contained the following restrictions:

"No more than two one-family private dwellings costing no less than nine thousand dollars each when erected, together with suitable outbuildings to be placed on said tract. The said houses to face on Park street on lots having a frontage of not less than one hundred feet, the front foundation wall of said dwelling to be at least fifty feet from the westerly side of Park street, the said outbuildings to be next to the southerly line of each lot and no nearer Park street than the rear line of the dwellings that may be placed on the several lots."

Before commencement of this action complainant had built upon his lot a residence conforming to his restrictions in respect to size and cost, but the actual front line of the house is only fifty-six feet from the street line measured at right angles thereto.

In April, 1911, the defendant commenced the erection of a residence on the northerly one of her two lots. It fronts on Park street as required by her deed. Its front line is seventy-five feet from Park street. The north side line of the house is forty feet from Wildwood avenue at the front corner and thirty-six feet from Wildwood avenue at the rear corner. The house was designed to cost approximately $18,000.

On April 10th, 1911, defendant's husband learned that com-

plainant objected to the erection of the house. He called on the
complainant in the afternoon and they then showed each other
their respective deeds. He testified that this was the first actual
knowledge that he had of the agreement in the complainant's
deed. The work of excavation was accordingly suspended pend-
ing an investigation. Later the work was resumed, and in June,
1911, the complainant gave formal notice of his claim, and on
July 5th, 1911, filed the bill which resulted in the injunction
now under review.

We are of opinion that the injunction was improperly granted.

The defendant contends with much force that the complainant
is not entitled to the aid of a court of equity because, first, he
has himself violated the covenant which he seeks to enforce by
the erection of his building within the restricted line; and
second, because of laches in his application for relief; but we are
not inclined to rest our decision upon either of these grounds.

We hold that if both these contentions are determined against
the defendant, as they were in the court below, she was still
within her rights.

The learned vice-chancellor properly found that there was no
general plan of restricted building line which affected the houses
and lots fronting upon Park street, and with knowledge of which
the defendant was charged.

It is, therefore, quite evident that the complainant must rely
upon the express covenant in his own deed.

We have not stopped to consider the propriety of the vice-chan-
cellor's conclusion that the defendant had constructive notice of
the complainant's deed by force of the statute.

Assuming for the purpose of this case that the defendant had
actual knowledge of the covenant in the compainant's deed, we
still think that this action cannot be maintained.

The complainant testified that when he contemplated pur-
chasing in the locality in question his original purpose was to
buy these two corner lots fronting on Park street instead of the
one which he actually did purchase, and that during the negotia-
tions on this basis, he was informed by Mr. Bardsley that the
buildings to be erected on the corner lots, like those to be erected
on Wildwood avenue, would be required to be sixty feet back

from that avenue. As we have pointed out, upon purchasing the lot which he owns he required a provision to be inserted in his deed by Bardsley in the following words :· "And the parties of the first part hereby agree that they will not convey any of the adjoining lots except by deed containing the same restrictions as above recited." · The pertinent restriction "above recited" was that the building to be erected thereon should "be so located that the front line thereof shall not be nearer than sixty feet to the street line measured at right angles thereto."

A reference to the description of the property and the map seems to plainly show that the street line referred to was that upon which the property fronted. The map, which was a part of the public records affecting the property, showed that these lots which the defendant purchased fronted on Park street. Moreover, the complainant knew that they fronted on Park street.

It seems to us that the restriction cannot be construed to forbid the erection of a house on defendant's lot within sixty feet of Wildwood avenue without doing violence to the plain meaning of common English words.

The language under consideration refers to the relative positions of the front line of the house and the street line, without naming the street.

The words "the street line," used in complainant's deed, mean the Wildwood avenue line; but both parties to the covenant knew that any house to be built upon the corner lot would have a front facing Park street, and that a covenant regulating the distance of *that* front line from the street could relate only to Park street.

The vice-chancellor solves this difficulty by applying the restriction to Wildwood avenue and to the *side* of the house which is toward Wildwood avenue. That seems to give no consideration to the ordinary meaning of the words "the front line of the house." His language is:

"If the same restrictions as to distance of the front line from Wildwood avenue are to apply, then no part *of this front* line can be nearer than sixty feet, and this without regard to the street on which the house itself on the corner lots may front.

Complainant's deed would not, as I take it, prevent his building a house on his lot which fronted toward Park street, but no part of the line of his dwelling which 'fronts' to Wildwood avenue can be nearer than sixty feet. For the purpose of the covenant *the line of the dwelling 'fronting' toward the street from which the measurements are to be taken is to be considered as the 'front line' intended by the covenant, although this line might be in fact the side line of the dwelling."*

In this quotation it will be observed that the words "front" and "front line" are used in two distinct senses. When he speaks of a house which fronts toward Park street, he uses the word in its correct and only sense. When he speaks of the *side* line of the house as *fronting* towards Wildwood avenue, he uses the word in a sense which, we believe, cannot be justified. Every man knows in an instant what is meant by the "front line" of a house. It is not the "side line;" and in order to make this covenant mean what the court of chancery says it means, the language must be radically changed. *Cent. Dict. tit. "Front;" Stand. Dict. tit. "Front."*

The word "side" may be used in a generic sense so as to include the "front," but it also has a specific meaning, which distinguishes it from "front." The word "front" as applied to a house is always specific.

We are, therefore, inclined to think that the plain meaning of the additional restriction which was inserted in complainant's deed at his insistence was that the purchasers of lands fronting on streets other than Wildwood avenue should not be permitted to erect buildings on those lots nearer to the line of the street upon which they fronted than sixty feet. It is to be remembered that there were two lots abutting on complainant's tract and fronting on Park street. Each of them was one hundred and twelve feet and nine inches in front and a little less on the rear. It would, of course, be impossible for the purchaser of the interior lot (if his purchase was restricted to that lot) to put a house on it nearer than one hundred and twelve feet from Wildwood avenue. If it was intended to affect the purchaser of the corner lot which had its side line on Wildwood avenue, he would be compelled to build his house entirely on the southerly half of

his lot.   So that both the natural construction of the language and the situation of the several lots would lead anybody contemplating purchasing either one of the Park street lots, and who was familiar with the restriction in the complainant's deed, to believe that its purpose was to require buildings to be sixty feet back from Park street.   So construed, the defendant has not violated the covenant, for, as we have seen, her dwelling-house was located seventy-five feet back from Park street.

But even if this is not perfectly clear it certainly cannot be said that the construction contended for by the complainant· is any more certain, particularly in view of the fact that it is entirely settled that every doubt and ambiguity in the language of a covenant restricting an owner's use of his property must be resolved in favor of the owner's right.

Courts of equity do not aid one man to restrict another in the uses·to which he may lawfully put his property unless the right to such aid is clear.   *Fortesque* v. *Carroll, 76 N. J. Eq. (6 Buch.) 583.*

In that case Mr. Justice Garrison, speaking for this court, said that "it is well settled that in cases where the right of a complainant to relief by the enforcement of a restrictive covenant is doubtful, 'to doubt is to deny.' "   The reasons for the rule, as pointed out in the opinion, are—*first,* because restrictions of the lawful uses of property are against common right, and ·*second,* because restrictions, in the framing of which a *subsequent purchaser has had no voice,* ought to be so clear that by the acceptance of·the deed that declares them he may reasonably be deemed to have understood and acceded to them.

Since the complainant's right to relief is at most doubtful, the decree below will be reversed.

A *remittitur* to that effect may be entered, to the end that the complainant's bill may be dismissed.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Bogert, Vredenburgh, Congdon, Treacy—12.