Complainant and defendant Buickerood own lots fronting on Reid street, Elizabeth, separated from each other by a ten-foot strip or alley, running from Reid street back to lands of defendant Engel in the rear, occupied by Engel for the stabling and care of automobiles used in his business of funeral director. Engel also owns the fee in the ten-foot alley and owns a residence lot abutting on his "stable" lot, but fronting on another street. Defendant Peters owns a lot in the rear, abutting on Engel's lot.
Complainant has right of way, appurtenant to his lot, over the ten-foot alley, arising by grant from a prior owner of the fee in the alley. Defendant Engel, present owner of the fee in the strip, concededly has the right to use the strip for the *Page 254 
passage of cars between Reid street and his "stable" lot in the rear. Engel has given permission to Peters and to Buickerood to use the strip for the passage of cars garaged on their respective lots.
Complainant sues to enjoin the use of the driveway by defendants Buickerood and Peters, and to enjoin defendant Engel from using the driveway for the benefit of Engel's residence lot. (He also alleges, and seeks injunction against, unnecessary noises by defendants in using the driveway — but there is no proof of anything of the kind.)
Complainant's lot, and the adjoining ten-foot strip, and Engel's stable lot in the rear were all owned at one time by one John C. Kleinhans, who in 1913 conveyed the stable lot to Engel's predecessor in title, and in 1921 also conveyed to him the fee in the strip, after having first conveyed complainant's lot to complainant's predecessor in title together with a right of way over the strip. The grant of the right of way is as follows:
"Together with the use and right of way over" (describing the strip) "which said strip of land shall remain open and unobstructed as an easement appurtenant to" (complainant's lot) "as a passage and driveway for the use of the present and future owners and occupants of" (complainant's lot) "and for the use of * * * the owner of the property in the rear thereof, his heirs and assigns."
Complainant is not entitled to restraint against Engel as to the use of the strip for the funeral cars stored on the stable lot. This is clear, and was eventually conceded by complainant on the argument. He originally contended that Engel had no right toany use of the driveway, because by the deed granting the right of way (hereinbefore mentioned) the right of use for the owner of the stable lot was not reserved to the grantor of that conveyance, and was not conveyed to the owner of the stable lot because the latter was not a party to the instrument. It is obvious that this argument is without force: Engel's right to the use of the drive does not rest on any reservation or separate grant but came to him with the conveyance of the fee in the drive. *Page 255 
Complainant is not entitled to restraint against defendant Engel as to the use of the strip for the benefit of his residence lot. In the first place, no such use has been shown. The most that appears is that the strip is used at times by a car used by Engel in the business aforesaid, and which car is also occasionally used by him as a pleasure car. An additional reason will be mentioned later.
Complainant strenuously denies the right of the defendant Buickerood to the use of the driveway. He contends that under the terms of the grant to complainant's predecessor Buickerood had no such valid right; that the owners of complainant's lot have a right of use in the strip, to be shared only by the owners of the stable lot for the benefit of the stable lot only; that the owners of the stable lot could not cut down the rights of the owners of complainant's lot by requiring the latter to share the use of the drive with additional persons.
Defendant Peters filed no answer and did not appear at the hearing, but Engel and Buickerood contend that the conduct of complainant estops him from denying Buickerood's right to the use of the drive and from any right to injunction against such use. It is concluded that the evidence does establish the estoppel claimed.
When complainant bought, in 1928, Buickerood was using the drive for his car (under a revocable license from Engel's predecessor). This was open and obvious to complainant, who made no objection. Shortly thereafter Buickerood, being desirous of erecting two two-car garages on his lot for the use of tenants or occupants of the two two-family houses on that lot, conveyed the rear portion of his lot to defendant Engel in consideration of grant of right of way to him by Engel; and thereafter proceeded to construct the garages. The construction took several weeks; complainant was at home during practically all this time, saw the construction and talked to the workmen and to Engel and Buickerood, but made no objection; there was obviously no way of access to these garages except over the driveway in question. *Page 256 
The testimony of Buickerood and Engel is to the effect that all this was known to complainant; that they had conversations with complainant prior to and at the time of the building of the garages; that complainant not only made no objections, but agreed with them that the drive should be paved and curbed with concrete at the joint expense of all three. Complainant denies this, but there is corroborative evidence by several other witnesses, and complainant's testimony is full of self-contradictions; moreover, there was strong additional corroboration from the fact (which was so clear at the hearing and arguments), that the thing which was objectionable to complainant was not any additional burdening of the easement by Buickerood, but the driving of the funeral cars of defendant Engel past complainant's house; this he desired to have completely stopped because of the effect which he said it had upon his wife's nerves and health in reminding her of the recent death of her child.
It is deemed moreover that there is a further ground upon which complainant's right to injunction must be denied — not only as against Engel and Buickerood, but also as against Peters.
Clearly the owner of the unrestricted fee has the right to permit as many persons as he may see fit to drive over his lot. The fact that he grants permission to one man to drive over the lot does not in itself preclude him from giving others similar permission. He may, of course, by adequate agreement in that behalf, restrict his right to permit others to pass over the land; but he is not so restricted in the absence of some such restrictive agreement.
If the permission to the first man is by way of formal grant instead of license, the grantee of course acquires an irrevocable right instead of a mere revocable license, but otherwise it is not perceived that there is any material difference. The granting of a right of way to one man does not of itself evince an intention that that right of way shall be exclusive and that no other person shall have any right to use that right of way. The general rule and principle, as set forth in 19 C.J. 978 is — as might naturally be expected — *Page 257 
that the owner of lands burdened with a right of way has all the rights and benefits of the soil consistent with the reasonable use of the way. This would naturally include the right to pass over the drive himself as often as he saw fit, and the right to grant to other persons the right to similar passage. Those are rights naturally inherent in the ownership on the fee.
True it is that the owner of the servient tenement has no right to materially impair or unreasonably interfere with the use of the way by the dominant owner — but it is not perceived that any such impairment or interference is occasioned by giving permission, or granting right, to others for a similar use of the way. That the dominant owner may occasionally have to wait for a moment while some one else is entering or leaving the driveway, does not seem a material impairment or substantial interference with his right to use the drive. A right to use the drive is after all only a right to use the drive; it is not the ownership of the driveway and it is not the exclusive right to use the driveway — unless such exclusive right has been granted.
The language of the grant in the instant case assuredly contains no express provision curtailing or limiting the right of the owner of the fee to grant similar rights of way to others. Neither does that language by necessary or even probable inference indicate an intention that the ownership of the fee should be so restricted. The language that the strip shall remain open for the use of the owners and occupants of complainant's lot and for the use of the owner of the property in the rear (who was at that time a different person from the owner of the fee in the strip), is not a provision that the strip shall not be open for the use of any one else. Moreover it is to be open for the use of the owner of the property in the rear, and "his heirs and assigns." Grantees of rights of way from such owner come within the category of "assigns."
The most that can be said is that the language of the grant is not inconsistent with, or contradictory of, an interpretation of intent to grant a right of way which should be exclusive *Page 258 
in the grantee except for the owner of the land in the rear; but that is not sufficient. To establish, in favor of a complainant, a restriction upon the rights of an owner in fee, the language relied on, if not express, must at the very least be such that the intent to restrict is a reasonably probable inference. It is certainly well established in this state that courts of equity do not aid one man to restrict another in the use of his land, unless the right to such aid is clear. Fortesque v. Carroll,76 N.J. Eq. 583 (at p. 586); 75 Atl. Rep. 923; Howland v.Andrus, 81 N.J. Eq. 175 (at p. 181); 86 Atl. Rep. 391;Underwood v. Herman Co., 82 N.J. Eq. 353 (at p. 355);89 Atl. Rep. 21.
Decisions in other states to the effect that the owner of the servient tenement may not validly grant rights of way to third parties without the consent of the dominant owner, can therefore be accorded little if any weight. Moreover they are opposed to what is essentially a determination of the particular point at issue, by our court of last resort.
In Jarman v. Freeman, 78 N.J. Eq. 464; 79 Atl. Rep. 1065,
and 80 N.J. Eq. 81; 83 Atl. Rep. 372, a situation essentially similar to the one in the present case was before this court and it was held that extension to others of the privilege of the use of the right of way would operate to interfere with the full enjoyment of the right by the dominant owner — and injunction was granted. On appeal the decree was reversed and the bill dismissed, on the ground that the owner of the fee had made to the city a deed of dedication for the strip as a public highway and there had been an acceptance thereof by the city; and that thereby the complainant's easement had become merged in the public easement. Jarman v. Freeman, 85 Atl. Rep. 184. (By some inadvertence this opinion seems not to have been published in the New Jersey Equity Reports at the time it was decided, but is now printed in 112 N.J. Eq. 308.)
Although the appellate opinion refrains from any express statement in this behalf, it seems clear that the appellate determination necessarily contravenes the determination that a grant of a right of way to a third party would be a material *Page 259 
impairment of a right of way already granted and therefore invalid as to the owner of the already existing right of way. Since the owner of the servient tenement (as the appellate opinion determines) may, by himself and without the participation or concurrence of the owner of the dominant tenement, accomplish (on acceptance by the city) a valid dedication of the servient tenement as a public highway — thereby subjecting the dominant owner's right of use to the concurrent and equal right of use by the general public — it must follow that the dominant owner could not have had a right of way which was in any sense exclusive. If the grant to the dominant owner constituted an agreement that the dominant owner's use was to be shared with no other person than the grantor or owner of the servient tenement, a subsequent attempt by the latter to give similar rights to others (by dedication to the public), would be an attempt to impair the dominant owner's vested contractual rights and would be invalid and ineffective without his consent.
The opinions in this court in the Jarman Case lay stress upon the fact that the defendant in that case was a warehouseman and his use of the right of way by heavy trucks would add to the burden of complainant's duty to keep the way in repair. Obviously, however, complainant's rights in that respect could be protected without declaring the subsequent grant of right of way invalid. The grant of the second right of way did not in itself impair or interfere with complainant's right; the actualconduct of the second grantee in his use of such right of way might impair or interfere with complainant's use. But clearly in such case relief could be granted to complainant without invalidating the second grantee's right; the second grantee could be enjoined from improper use and could be made to respond for undue damage to the way, or for a fair share of keeping the way in repair.
In the case now before the court there is no evidence of any improper use of the way by any defendant; no evidence of any
interference with complainant's use of the way; no evidence of any excessive wear and tear on the surface of the way or any failure on the part of any defendant of any duty *Page 260 
to keep the way in proper repair or to participate in or contribute to so doing.
The bill will be dismissed as against all defendants.