Lennig v. Ocean City Association.

---

George G. Lennig, appellant,

*v.*

The Ocean City Association, respondent.

The defendant, a religious camp-meeting association, having laid out and mapped its seaside property into lots, reserving a tier of blocks, extending from the ocean westward, as a " camp ground " for religious services and tenting purposes, and having sold to the complainant lots by this map fronting on the blocks so reserved, whereon he erected a summer residence—*Held*, that the association had thereby entered into an implied covenant with the complainant that these blocks should be devoted to the uses indicated, and that it had no right to divide these blocks into lots for the purpose of leasing them for a term of years with the privilege of erecting thereon permanent cottages.

---

On appeal from a decree of the chancellor, whose opinion is reported in *Lennig* v. *Ocean City Association, 14 Stew. Eq. 24.*

*Mr. J. C. Leaming,* for appellant.

*Mr. D. J. Pancoast,* for respondent

The opinion of the court was delivered by

Dixon, J.

The defendant is a corporation organized under the laws of this state for the avowed object of " establishing a summer seaside resort, founded on Christian principles, and affording religious privileges as well as healthful recreation." For this purpose it acquired a tract of land upon the Atlantic coast, consisting of three sections, distinguished by the letters A, B and C. It

caused section A to be plotted upon a map or plan into rectangular blocks divided by Atlantic, Ocean, Wesley, Central, Asbury and West avenues, running nearly parallel with the shore, and by streets numbered from First to Ninth, inclusive, running at right angles with the avenues.    These blocks, except the five which lie between Fifth and Sixth streets, were divided into lots numbered on the plan consecutively from one to nine hundred and ninety-five.    Of the five excepted blocks the two nearest the ocean and the one furthest from it appear on the map as blank rectangles, the other two form a square bounded by Fifth and Sixth streets and Wesley and Asbury avenues, and intersected by what seem to be footways leading to an inner space marked " auditorium."

On May 26th, 1880, the defendant held a public sale of lots laid down on this map, before and at which were distributed similar maps, on which, however, the lots were not numbered, but only outlined, and the blocks between Fifth and Sixth streets appeared to be occupied by trees, the square before mentioned being designated " camp ground."    At this sale the complainant bought a lot on the southeasterly corner of Sixth street and Wesley avenue, which was conveyed to him as lot No. 698 on the map first mentioned.

Subsequently, in July, 1880, and May, 1881, he purchased from the association lots Nos. 700 and 702 on the same plan, thus securing a plot having one hundred and five feet on Sixth street and one hundred and fifty feet on Wesley avenue, and shortly afterwards he erected thereon a summer dwelling.

Early in 1881 the association published its first annual report, in which is stated :

" The space allotted to the encampment is five hundred feet wide, from the thoroughfare to the ocean, with plenty of tenting ground."

This description applies to the entire space between Fifth and Sixth streets.

In its second annual report, published in 1882, one page contains a diagram showing the square above referred to substantially as in the original map, and also the adjacent portions of

the blocks upon the east and west of that square, the west block being marked " grove " and the east " park."

In the fall of 1882 the defendant publicly announced :

" After an experiment of two summers with canvas tents the association has taken a new departure. The two squares of ground lying between Wesley avenue and the beach and between Fifth and Sixth streets, reserved for tenting purposes, will be laid off in lots suitable for the erection of small, neat cottages, similar to those in use at Pitman Grove and elsewhere. The association does not propose at present to erect the cottages, but simply to lease the lots for small rent yearly, with privilege of ten years."

The complainant insists that the execution of this scheme will be in derogation of his property rights, and will materially interfere with the enjoyment of his dwelling, and he prays that it may be prevented by injunction. On final hearing the injunction, which the chancellor had at first granted, was dissolved, and the bill dismissed. Hence this appeal.

Whenever the owner of a tract of land lays it out into blocks and lots upon a map, and on that map designates certain portions of the land to be used as streets, parks, squares, or in other modes of a general nature calculated to give additional value to the lots delineated thereon, and then conveys those lots by reference to the map, he becomes bound to the grantees not to use the portions so devoted to the common advantage otherwise than in the manner indicated. This principle has been asserted most frequently for the purpose of supporting dedications to uses strictly public; but it is by no means necessary that such a use should be created. As was said by this court in *Booraem* v. *North Hudson Co. R. R. Co., 13 Stew. Eq. 557*, with regard to the dedication of a highway by means of conveyances to private persons which referred to a proposed street over other lands of the grantor, " the private rights of the grantees precede the public right, and are the source from which the public right springs. By such conveyances the grantees are regarded as purchasers, by implied covenant, of the right to the use of the street as a means of passage to and from their premises, as appurtenant to the premises granted, and this private right of way in the grantees is wholly distinct from and independent of the right of

passage to be acquired by the public." From this doctrine, it of course follows that such distinct and independent private rights, in other lands of the grantor than those granted, may be acquired by implied covenant as appurtenant to the premises granted, although they are not of such a nature as to give rise to public rights by dedication. The object of the principle is, not to create public rights, but to secure to persons purchasing lots under such circumstances those benefits, the promise of which it is reasonable to infer has induced them to buy portions of a tract laid out on the plan indicated. *Clark* v. *Elizabeth, 8 Vr. 120, 11 Vr. 172; Bayonne* v. *Ford, 14 Vr. 292.*

The inquiry now presented therefore must be, not whether the association has dedicated the blocks between Fifth and Sixth streets to public use, but whether it has entered into an implied covenant with the complainant not to use those blocks in the mode now proposed, and has granted to him, as appurtenant to his lots, the benefits to be derived from such restriction.

The circumstances lead us to answer this inquiry in the affirmative.

The map or plan according to which the complainant's deeds were made, interpreted in the light of the object of the association as avowed in its articles of incorporation, indicates that the blocks between Fifth and Sixth streets were not to be divided into lots; that the square between Wesley and Asbury avenues was to be used for the auditorium; and that the blocks between Wesley avenue and the sea were to be kept open. Taking into view also the plan circulated at the sale, in May, 1880, and the published reports of the association, it further appears that these blocks and squares were to form the camp ground, reserved for religious services and tenting purposes. The testimony shows that at the time the complainant bought his lots it was the usage among associations similar to the defendant to reserve, around their buildings erected for worship, an open space whereon those assembled for the camp-meeting dwelt in tents during its continuance. These tents were, as the term imports, of canvas, sometimes with a wooden kitchen attached, but the erections were all of a temporary nature and were removed as soon as the

39

meeting ended.   This no doubt was the character of the use to which the defendant devoted the ground now in controversy ; it was to be a camp for the purposes of a religious camp-meeting, where the sojourners would remain a short time under the shelter of tents or other such temporary structures.

It is obvious that the use now contemplated is a very different one, and very differently affecting the complainant's property. Instead of a camp, occupied for a few weeks only by tents which will scarcely at all interfere with the prospect or the breeze over an open space six hundred feet wide extending to the ocean, the ground is to be divided into small lots, on which permanent buildings are to be constructed, of such height and dimensions as may suit the taste of the occupant, and shutting in the complainant's dwelling to an outlook over a fifty-foot street.   The contrast between the two situations covers much of the attractiveness of a seaside resort.   If the present scheme of the defendant be carried out, it is certain that the complainant will lose a great portion of those advantages which the association impliedly promised him as inducements to the purchase of its lots.   Of this he has a right to complain, and it is no answer to say that the use of tents at these camp-meetings is now generally abandoned ; that frequenters demand the accommodations of more durable places of abode, and the association must meet this demand or suspend its operations.   Such considerations do not impair the binding force of bargains.

In our judgment, the injunction prayed for should be granted, and to this end the decree below should be reversed.

*Decree unanimously reversed.*