E. ALEXANDER UNDERWOOD, complainant-respondent,

*v.*

HERMAN & COMPANY, a corporation, defendant-appellant.

[Submitted July 7th, 1913. Decided November 17th, 1913.]

1. A covenant in a deed of conveyance that neither party shall erect upon the land conveyed a building other than "a dwelling-house and its appropriate buildings" will not be enforced by injunction against a grantee who proposes to erect a three-story apartment-house, where it appears that the indefinite and uncertain language of the covenant has been given a practical application and interpretation upon the land by prior grantees, who were allowed to erect two-family houses of three stories and other two-family houses upon a single plot.

2. To warrant the issuing of an injunction to restrain the owner of the fee from applying his land to a lawful practical use, because of the existence of a restrictive covenant in the grant, it must appear that the terms of the covenant leave no doubt as to their meaning.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Howell.

*Mr. Frank E. Bradner,* for the complainant-respondent.

*Mr. Philip J. Scholland,* for the defendant-appellant.

The opinion of the court was delivered by

MINTURN, J.

The bill was filed to enforce the following building restriction:

"The said party of the second part for himself, his heirs and assigns, doth covenant to and with the said party of the first part, their heirs, executors and administrators, that neither the said party of the second part, nor his heirs or assigns, shall or will at any time hereafter erect upon said lot any building other than a dwelling-house and its appropriate buildings, the said dwelling-house to cost in no case less than three

23

thousand dollars, and to be located at least twenty feet distant from the line of Osborne Terrace;· and that no barn shall be erected on said lot within one hundred feet from the line of Osborne Terrace. neither shall they erect or permit upon any part of said premises any buildings to be used for the sale of intoxicating liquors, or for any manufacturing business, or any hog pen, public laundry, livery stable, meat or fish market, or for any purpose that would be considered detrimental, noxious or dangerous to the owners or occupants of the surrounding premises."

This restriction was contained in all the deeds of conveyance of forty-eight plots of ground, containing fifty feet frontage by one hundred and fifty feet in depth, made and executed by James H. Osborne and Robert A. Osborne to various grantees, among whom were the complainant and the defendant.

The lots were situated on Osborne Terrace, running south from Clinton avenue, in the city of Newark, for a distance of twelve hundred feet. The complainant was among the first purchasers and erected a one-family residence upon the plot he purchased. The plots thus restricted were built upon excepting that purchased by the defendant and another purchaser of a lot near Clinton avenue. Thirteen of the forty-seven houses built upon the plots are two-family houses, and thirty-four of the plots contain one-family houses.

The defendant undertook to erect upon the plot purchased by it what is termed "a modern high-class apartment-house" three stories high.

The case shows that nearly all the houses on the tract are three stories in height in front. It becomes manifest from the testimony that whatever design the original grantors entertained of restricting the use of the tract to the erection of single-family houses has been practically abandoned.by the erection presumably with the acquiescence of all parties concerned, of a number of two-family houses upon a single plot, and in at least two instances of two-family houses upon a single plot, and such was the situation when the defendant took title.

In this situation the defendant undertook to excavate for the construction of its apartment-house when it was enjoined by a restraining order, and, subsequently, by a temporary injunction, followed by the decree advising a permanent injunction, which presents the subject-matter of this appeal.

We find it unnecessary, for the disposition of this case, to say more than to reiterate the principle of equitable jurisprudence so frequently applied in cases of this nature, that unless the right to restrict is made manifest and clear in the covenant, a court of equity will not aid by its process of injunction one owner to restrict another in the otherwise lawful use to which he may put his land. *Howland* v. *Andruss, 80 N. J. Eq. (10 Buch.) 276.*

In the case of *Fortesque* v. *Carroll, 76 N. J. Eq. (6 Buch.) 583,* Mr. Justice Garrison, speaking for this court, where the covenant limited construction to "not more than one building shall be erected on a single lot as mapped on plan," says: "It is well settled that in cases where the right of a complainant to relief by the enforcement of a restrictive covenant is doubtful, to doubt is to deny. Courts of equity do not aid one man to restrict another in the uses to which he may put his land, unless the right to such aid is clear." Citing *Newbury* v. *Barkalow, 75 N. J. Eq. (5 Buch.) 128.*

This formula is but the practical application of the fundamental equitable doctrine that all restrictions upon the use of land conveyed in fee, which restrain the grantee from exercising the rights of an owner are strictly construed. *Walker* v. *Renner, 60 N. J. Eq. (15 Dick.) 493.*

We consider these principles applicable to the case at bar, and they become dispositive of the question involved. The grantors in their covenant made no attempt by language to define the meaning of a "dwelling-house and its appropriate buildings," but allowed each grantee in the practical adaptation of the land to his personal requirements, to construe the language of the covenant to meet the personal exigency.

In this manner language of an uncertain and indefinite character received a practical interpretation upon the land by the grantees, presumably with the acquiescence of the grantors and prior grantees.

This practical interpretation of the covenant which the learned vice-chancellor has found to exist, emphasizes the contention that the variations and departures from the strict terms of the covenant are due to its uncertainty and indefiniteness; factors

which bring the case within the application of the doctrine of the cases to which we have referred, and which require the reversal of the decree appealed from.

The decree appealed from will therefore be reversed.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Voorhees, Minturn, Kalisch, Vredenburgh, Congdon, White, Terhune, Heppenheimer —14.