The bill seeks to restrain defendants from erecting or operating a hosiery mill on certain lots in violation of an agreement by a former owner of the land to the effect that the lots would be used only for residential purposes.
At the time that agreement was made, defendant Parr was the owner of a tract of land at Collingswood, New Jersey, which he had laid out in streets and lots; the plan had been filed by him and approved by the borough commissioners. The tract comprised twenty-two lots owned by Parr — of suitable size and locations for residential purposes; none of the lots have yet been built upon. Complainant Radey purchased from Parr lot number 22 and complainant Herold lot number 8, in reliance upon the representation of Parr that the tract was to be maintained as an exclusive residential tract. Defendant, the Collingswood Hosiery Mill, has since purchased from Parr lots 9 to 14, inclusive, with knowledge of Parr's representation to complainants, and that company now proposes to erect on those lots and operate *Page 29 
a hosiery mill; this mill will be directly in front of the lots owned by complainants.
At the return of an order to show cause for preliminary restraint a written stipulation of facts has been agreed upon by the parties.
That part of the stipulation presently to be considered is as follows:
"The defendant, John T. Parr, at the time of the conveyances to the complainants, Radey and Herold, by express representations, guaranteed unto them that the tract in question was to be developed and maintained as an exclusively residential tract, and the prices charged by the defendant, John T. Parr, were paid on the representation that the lots were purchased in an exclusively residential location and by reason thereof, according to said defendant, John T. Parr, were worth the prices which were being asked, which varied from two thousand dollars to twenty-five hundred dollars.
"At or about the time the sales in question were made, but before the passage of title unto the respective purchasers, there was erected on the tract, facing Bettlewood avenue, the main thoroughfare nearest the tract, a large sign with the plan of lots drawn upon the same, bearing the words — `Exclusive Location,' in letters about ten inches high, and in smaller letters, approximately six inches high, the words — `Convenient Reasonable Attractive.'
"The complainants, Radey and Herold, purchased the respective properties from the defendant, John T. Parr, relying on the representations which said defendant, John T. Parr, made that the tract was to be exclusively developed as a residential tract, and the defendant, John T. Parr, thereafter continued to represent unto prospective purchasers that the tract was to be reserved exclusively for residential purposes, until the recent sale to the defendant, the Collingswood Hosiery Mills.
"The defendant, the Collingswood Hosiery Mills, or its trustee, purchased lots Nos. 9 to 14, inclusive, from the defendant, John T. Parr, with the knowledge of the representations and warranties that had been made to the purchasers *Page 30 
of lots Nos. 8 and 22 by the said defendant, John T. Parr, and with knowledge of the existence of the sign which was set upon the property, and also with knowledge of the restrictions which were in the Knight estate deed.
"The only lots sold by the defendant, John T. Parr, on the tract described in the map, aforesaid, have been the two sales to the complainants, Radey and Herold, and the alleged sale or agreement to sell to the defendant, the Collingswood Hosiery Mills; no houses or buildings have been erected on any of the lots sold."
At the argument it was conceded that the representations of Parr referred to in the stipulation above quoted were by parol.
Complainants contend that the sign referred to in the stipulation, in connection with the parol representations of Parr, invoke the doctrine of implied covenants against business uses, within the principles defined in Lennig v. Ocean CityAssn., 41 N.J. Eq. 606; Bridgewater v. Ocean City Railroad Co.,62 N.J. Eq. 276; affirmed, 63 N.J. Eq. 798, and Bridgewater v.Ocean City Assn., 85 N.J. Eq. 379. These Ocean City cases are based upon a filed map with reference to which conveyances of lots were made. That map, as stated in the opinion in the LennigCase, "interpreted in the light of the objects of the association as avowed in its articles of incorporation," indicated that the territory there in question was not to be divided into lots. From that map, with reference to which conveyances were made, and the other circumstances there referred to, it was held that an implied covenant arose, in favor of owners of lots on the tract, not to use the land which was there in controversy in the manner subsequently proposed. The other cases above cited were based upon the Lennig Case.
The implied covenant there declared was primarily based upon the map with reference to which conveyances had been made, as was the implied covenant suggested in Booraem v. North HudsonCounty Railway Co., 40 N.J. Eq. 557, in analogy to which theLennig Case was determined. That map, in the Lennig Case, clearly set apart the disputed territory *Page 31 
to a restricted use which, by necessary implication, inured to the benefit of purchasers of lots with reference to that map. The contrast between purchasing lots with specific reference to that filed map, and purchasing with specific reference to a filed map which negatived any suggestion touching restricted use is apparent, since the claim of implied covenant in the present case must be based upon the sign on a distant part of the tract containing the words "Exclusive Locations" and the added words "convenient, reasonable and attractive," and so far as that sign and the parol representations may be thought to impose upon the tract an implied covenant for a restricted use, such implied covenant would necessarily be raised in direct conflict with the terms of the conveyance which was with reference to the unrestricted filed map to which it referred. I find no justification in principle or authority for extending the doctrine of implied covenants beyond the scope of the cases above referred to.
It is further urged in behalf of complainants that the parol engagement of Parr to the effect that the tract would be devoted exclusively to residential purposes is operative as an estoppel against Parr and his grantee with notice.
In Lawrence v. Springer, 49 N.J. Eq. 289, our court of errors and appeals definitely determined that the owner of real estate cannot be compelled to forego the benefits of his legal title and admit the equitable claims of another in direct contravention of the literal requirements of the statute of frauds, except to the extent evidenced by the ancient decisions in the English chancery. A regret is there expressed that the invasion of the statute has been extended to the extent so recognized. Again in Barbour v. Barbour, 51 N.J. Eq. 267 (atp. 268), the same court states that in Lawrence v. Springer
it has "set its face against" any further extension.
The exceptional circumstances thus referred to in which parol evidence may be effective to compel the owner of real estate to forego the benefits of his legal title may be said to be too clearly established to justify any extended review *Page 32 
of the authorities. They may confidently be said to embrace only three situations: First, a parol contract for the sale of real estate which has been part performed by delivery of possession. That situation need not here be considered. Second, actual, positive fraud. This doctrine is usually embraced in the general statement that the statute of frauds, which was enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting or aiding the party who relies upon the statute, in the perpetration of a fraud, or in the consummation of a fraudulent scheme. In most situations courts of equity, in relieving from the consequences of fraud, measure fraud with reference to its results, and in making fraud the ground of equitable estoppel, regard it as such conduct by a party that it would be fraudulent, or a fraud upon the rights of another, for him afterwards to repudiate and set up claims inconsistent with it; thus regarding fraud as synonymous with "unconscientious" or "inequitable." See Pom. Eq. Jur. § 803. But that equitable conception of fraud is not applied to fraud adequate to overcome the direct provisions of the statute of frauds. In cases of that class it is uniformly held that the moral wrong in refusing to be bound by a parol agreement because it does not comply with the statute of frauds, is not fraud as contemplated by the rule that the statute shall not be made an instrument in the perpetration of a fraud. The accepted rule is that where in the sale of real estate there was no actual, positive fraud, but only a reliance upon the honor, word or promise of the defendant, the statute making these promises void, equity will not interfere. In the present case no fraud of the nature last referred to is disclosed. No evidence exists that at the time Parr made the promise it was his intention to violate it or to trick complainants into a waiver of a writing. Accordingly it is impossible to base an estoppel in this case upon the parol engagements or the existence of the sign already referred to. The third situation in which a parol promise may overcome the provisions of the statute arises where a parol contract is alleged by complainant, and defendant admits it in his answer without, at the same time, interposing the statute of frauds as a defense *Page 33 
in his pleading, since in such case no evidence is necessary to prove the parol contract. In the present case no answer has yet been filed. The stipulation admits the parol promise, but simultaneously defendants move against the bill on the ground that such promise is contrary to the statute of frauds. In that situation the statute cannot be said to be now waived by defendants. The authorities disclosing the established limitation of the doctrine of equitable estoppel, based upon parol representations touching the sale of land, to the three situations herein named, will be found collected in Pom. Spec.Perf. §§ 140 et seq.; Story Eq. Jur. §§ 755, 768, and 2Pom. Eq. Jur. §§ 806, 807
Complainant further contends that the erection of the factory is violative of certain restrictive covenants contained in a deed from Edward C. Knight's executor to a predecessor in title of Parr, dated April 1st, 1910. That contention cannot be sustained. The restrictive covenants contained in the Knight deed are as follows: "Subject, nevertheless, to the following conditions and restrictions for the benefit of the said party of the first part and also their assigns to whom any part of their lands may heretofore have been or may hereafter be rented or conveyed by the said party of the first part or his assigns;" then follow certain restrictions. These restrictions are specifically for the benefit of the remaining land of the Knight estate or such land as theretofore may have been conveyed by the Knight estate or thereafter might be so conveyed. The covenant does not run to or for the benefit of the vendee referred to or its assigns.
Complainants' bill also alleges that the operation of a hosiery mill on the proposed site will constitute a nuisance and work irreparable injury to complainants. Obviously the proposed mill is not a nuisance per se, and whether its operation will constitute a nuisance can only be ascertained when the mill shall have been operated.
Restraint pendente lite will be denied. The motion to strike out the bill will be denied. The bill must be answered; an answer may not invoke the statute of frauds and the bill also alleges a contemplated and threatened nuisance. *Page 34