J. Adam Schweitzer et al., complainants,

*v.*

Fred H. Adami, defendant.

[Decided March 16th, 1932.]

*Mr. Alan Bruce Conlin,* for the complainant.

*Mr. Paul Q. Oliver,* for the town of Westfield.

*Mr. William T. Long,* for the defendant.

Buchanan, V. C.

Complainants sue as vendors to compel specific performance by defendant vendee of a contract for the sale of a lot at Westfield, New Jersey, at the price of $1,200.

The defense is that the premises are subject to two alleged encumbrances and that the title is therefore unmarketable.

There is no dispute as to the facts. On a motion to strike the answer as frivolous, a stipulation of facts was filed by consent and the case was submitted as on final hearing.

The lot in question is located at the corner of Kimball avenue and Jefferson avenue—as the latter is now laid out

and existing. The general tract was mapped for development in 1872 and a copy of that map filed in the county clerk's office. On that map Jefferson avenue (then called Park avenue) was located a little southwest of its present location, and on its northeasterly side there was a small area designated "park." A portion of the lot in question is within the limits of the "park" area shown on the 1872 map, and another portion of the lot is within the lines of Park avenue as shown on the 1872 map.

The so-called "park" area has never been used as a park, has never been used by the public, and has never been developed or improved for park or public purposes; no streets were developed until after their relocation in 1924.

The present lines of Jefferson avenue were duly adopted by ordinance of the town of Westfield, in 1924, and the lands comprised within the lines of that street as shown on the 1872 map were formally vacated; and this relocation was recorded in the county clerk's office. Likewise it was ordained that the park be vacated as a public place and all public rights therein extinguished.

It is admitted, at least tacitly, that these acts of vacation have validly and effectively, under due legislative authority in the municipality, terminated the public rights.

Defendant contends that the lot is encumbered by two easements held by the present owners of other lots originally bought by reference to the 1872 map—an easement in Jefferson (Park) avenue, as shown on that map, and an easement of air, light and view in the "park" area shown on that map.

Defendant's argument is that the filing of the 1872 map was an offer of "dedication;" that the sale of the first lot by reference to the map consummated the "dedication;" that by such "dedication" each purchaser of any lot anywhere in the entire tract acquired (1) a private right of way in all the lands shown as streets on the map, and (2) a private right of light, air and view over the lands shown on the map as "park;" that these private rights were appurtenant to the lots so purchased; and were and are separate and distinct from the public rights, and survive unaffected by

the vacation of the public rights, citing *Booraem* v. *North Hudson County Railway Co., 40 N. J. Eq. 557,* and *Lennig* v. *Ocean City Association, 41 N. J. Eq. 606.*

Defendant does not contend that there are outstanding any public rights affecting this lot. Concededly there are not: defendant's only specifications of encumbrance are the alleged private rights in the owners of other lots in the same tract.

By the filing of the map of 1872, having this street (and others) delineated thereon, and the sale of lots by reference to the filed map, there resulted a dedication of those streets to the public use. *Dodge & Bliss Co.* v. *Mayor, &c., of Jersey City, 105 N. J. Eq. 545.*

Complainant concedes that it should be assumed that some conveyances of lots by reference to this map were made prior to the filing of the map—prior to the streets in question becoming public streets. By such a conveyance, the grantee acquires (by implied covenant) a private right to the use of the delineated streets; and such private right is appurtenant to the lots so conveyed. *Booraem* v. *North Hudson Railway Co., supra.*

All this is clear. The question in the present case is as to what becomes of such a private right after the street has become a public street? Is the private right terminated when the public right arises; or does it survive in abeyance so as to be revived if and when the public right thereafter be vacated?

The precise issue seems never to have been expressly decided in this state; although in at least three cases the right has been held at least doubtful.

In *Dodge* v. *Pennsylvania Railroad Co., 43 N. J. Eq. 351; affirmed, 45 N. J. Eq. 366,* complainant asserted a private right similar to the one herein discussed, after vacation of the public right, and sought injunction against interference with his use thereof. It was held that the legal right asserted by complainant was not established and the injunction denied. *Roberts* v. *West Jersey and Seashore Railroad Co., 72 N. J. Eq. 326,* was a similar case with a like result. *Coombs* v. *Atlantic City Railroad Co., 96 N. J. Eq. 709,* was likewise

a similar case, except that the right asserted by complainant arose, not by implication from sales by reference to a map, but by express grant or adverse user. The determination was the same as in the other two cases.

No case in this state has been cited which in anywise expresses a view favorable to the survival of the private right after the arising of the public right. On the other hand the contrary view is clearly expressed by Vice-Chancellor Leaming in the *Roberts Case, supra,* and is not difficult to discover in the language of Vice-Chancellor Van Fleet in the *Dodge Case, supra* (at *pp. 358, 359*).

Defendant relies solely on *Booraem* v. *North Hudson County Railway, supra,* which is in nowise authority for his contention. In that case there had never been any acceptance of the dedication; no public right had ever arisen; the holding was simply that the private right had arisen, a right variously referred to therein (at *pp. 563, 565*), as an "easement, or a right in the nature of an easement," and "a right by way of estoppel, covenant or implied grant." The question as to whether that private right would terminate, merge or be suspended on the consummation of dedication, was neither decided nor involved, and no opinion expressed; the court says only that there is some controversy among the authorities on that question (at *p. 564*).

To determine the character and attributes of this private right consideration must be given to the source and circumstances of its origin. It may well be that the owners of a tract might make, to the purchaser of a lot, an express grant of a private right of way, over the lands delineated and designated as a street on the map—and do it in such manner and form as that the private right so granted would continue (though subordinate to the public right) after the acceptance of the street as a public highway, and still continue after the vacation of the public rights in such highway.

We are dealing, however, with no such situation in the instant case: concededly there were no such grants from the tract in question. The right with which we are concerned arises not by grant, but by implied covenant. What *is* the implied covenant which arises under the given curcumstances?

Where the owner of a tract sells lots therein by reference to a map showing streets and the lots as abutting on those streets, a representation naturally and necessarily arises therefrom. It is not reasonable to suppose that the delineation of the streets and their designation as "streets" is meaningless—that it was done without intent by the owner; and it is quite obvious that a purchaser under those circumstances is entitled to assume, and to rely on, what would be the natural and ordinary inference therefrom.

In such a case as the present it is neither a necessary nor a natural implication from the circumstances, that the owner intends that the lot purchaser shall have a private right of way in the designated streets—nor that each lot owner shall have a private right of way in the streets in common with all other lot owners. The map represents the streets as public streets. The word "street" in its usual and ordinary meaning denotes a public highway. There are streets which are not public highways, but they are comparatively rare: in common usage, "street" means a public highway. In such a case as this it will be deemed to mean a public highway: just as "park" means "public park." *Price* v. *Inhabitants of Plainfield, 40 N. J. Law 608*. It may be argued that the owner's representation does not necessarily imply that the "streets" are in fact already public highways; but in any event it must at least imply that the owner intends them to become and to be public highways.

From the standpoint of our present inquiry, it makes little, if any, difference which of these two representations is to be implied (although the difference might be material if the issue raised was as to the right of the purchaser to rescind on the ground of misrepresentation). If the implied representation is deemed to be that the "streets" are already in fact public highways, then the owner would be estopped by reason of that representation, from denying that the streets were public highways and from any conduct or acts incompatible with the truth of that representation. The implied covenant would rest upon estoppel. If the implied representation is deemed to be that the "streets" are about to become and be

public highways, then the representation is essentially promissory, and the implied covenant would rest upon the implied promissory representation.

In either case, however, the nature and extent of the implied covenant must needs be the same (so far as concerns the purchaser who is not seeking to avoid his purchase but who accepts the purchase and seeks to enforce the implied covenant) to wit, that the "streets" are to be available to the purchasers of lots for use in all respects as if they were public highways. And that is the limit and extent of the right which the purchaser acquires.

This right, while it is (at least until the streets actually become public streets) a private right, inasmuch as it inheres in him not as one of the public but as an incident and result of his private contract—is obviously quite a different thing from the ordinary private right of way. It is a private right to the use and benefit of the streets as if they were public streets. Although the public would have no right to the use of the streets, the lot purchaser's private right would in all probability include the right to insist that the grantor should in nowise attempt to exclude any of the public from such use. On the other hand, that private right would be correspondingly limited so that the lot purchaser would have no greater rights than he would have if the streets were actually public streets (although his remedies of course might be different). He would have no right to object (as the owner of a private right of way would have) to the grantor permitting the general public to use the streets.

If the streets are in fact already public highways, then no private right by implied covenant arises. The representation, if deemed factual, is true; if deemed promissory, it has been performed. It is only where the representation is not true or not fulfilled—only where, and only because of the fact that, the streets are not in fact public highways—that the private right by implied covenant arises. Clearly then the private right which arises solely because of the fact that a representation is not true or has not been performed (although it be different in origin and technical legal character),

will be of no greater nature or extent than the right which the purchaser was led to believe he would have—no greater than the right he would have if the representation was true or had been fulfilled.

It follows also, as a matter of course, that if and when the representation is made true or fulfilled, the private right which has arisen and existed solely because the representation was not true or fulfilled, will cease. As soon as the streets actually become public highways, the purchaser acquires all that he originally thought he was getting—all that he was led to believe he was getting—all, therefore, that he is in anywise entitled to claim.

The private right which is raised by legal implication for the protection of the purchaser, under the circumstances mentioned, cannot and will not be deemed to include any greater characteristics than are reasonably necessary for such protection. It is not reasonable that any greater rights should be implied in his favor than he would have had if the circumstances had not required the raising of the implied right, *i. e.,* if the streets had actually been public streets. It is not reasonable therefore that there should be included, as a part or characteristic of the implied right, that it should continue any longer than the continuance of the circumstances which caused its genesis and its subsequent existence—nor that it should be revived by a later vacation of the public rights in the street. If the representation had been true or fulfilled in the beginning, no such private right would arise on a subsequent vacation of the public rights in the street; and the purchaser is not entitled to any greater rights than he would have had if the representation had been true or fulfilled in the beginning.

Consideration of the rationale of the implied "easement" in question therefore leads logically to the conclusion that the private right ceases with the acceptance of the street as a public highway and does not revive by a subsequent vacation of the public right.

It may be noted, in further support of that conclusion, that the implied right is of course a restriction upon the use

of lands, and that the law does not look with favor upon such restrictions. Even when the covenant is express, it is construed strictly; where doubt exists, it is resolved against, and not in favor of, any enlargement of the restriction necessarily involved therein. *Walker* v. *Renner, 60 N. J. Eq. 493* (at *p. 498*); *Underwood* v. *Herman & Co., 82 N. J. Eq. 353*; *Paff* v. *Margerum, 103 N. J. Eq. 74.*

Under this well established principle, it follows that where a restriction is raised by implication of law, its extent will naturally be confined within the narrowest scope possible under the circumstances. The trend of authority is against any extension of the doctrine of implied covenants. *Radey* v. *Parr, 108 N. J. Eq. 27* (at *p. 31*).

The same reasoning applies to the outstanding private rights alleged by defendant to exist in respect to the lands designated as "park" on the 1872 map, and leads to a similar conclusion. "Park" on such a map means "public park" (*Price* v. *Inhabitants of Plainfield, supra*); the representation thereby made was that the "park" area was, or would be, a public park; if lots were sold by reference to the map before the "park" actually became a public park, possibly a private right arose by implication, in favor of such purchasers, against the grantor and his successors in title, that the area should be as though it were a public park; those private rights, if they arose, terminated and merged in the public right, when the latter arose, and did not revive when the public right was thereafter vacated, because no such private rights would arise if the park had been actually a public park before the sale of any lots, and the implied private right cannot be deemed to carry any greater rights than would have been enjoyed by the purchasers if the park had already been a public park when they bought.

Defendant cites and relies solely upon *Lennig* v. *Ocean City Association, supra.* Here again the case relied on affords him no authority for his contention.

The determination in the *Lennig Case* was not that the implied private right arising from the representation of a public park revived after a vacation of the public right. No

public right had been vacated; no public right had ever arisen; indeed no representation as to a public park had been made. The representation that was made by the owners of the tract (which was a tract abutting on the shore of the ocean, at a summer resort) was that a tract between the lots offered for sale and the ocean would be kept open as a camp meeting ground and not built upon with houses in the ordinary way. An attempt shortly afterwards by its owners, to build on this open space was restrained in favor of the lot purchasers, on the ground of their private right by implied covenant by the owners that such a thing should not be done. The representations on which the court founded this implied covenant were two maps, on one of which the open space was blank, and on the other "appeared to be occupied with trees," and also the articles of incorporation of defendant.

The differences between that case and the instant case are obvious. For one thing, the location was special and unique —on the ocean shore, where open air and view to the ocean were of singular value. For another, the representations which were deemed to raise the implied covenant, were made by a number of various acts in addition to the delineation and designation on the map. For another, the attempt to devote the camp meeting ground to private uses, freed of the implied restrictive covenant, was made *before* and not *after* the raising and subsequent vacation of a public right in the lands. It does not follow from that determination, that if a similar attempt were to be made after the lands had been dedicated and accepted as a public park and subsequently vacated as a public park, that a similar determination would result. But even if a similar result should be reached in such event, it would not conflict with the conclusion in the instant case—for the nature of the representation and of the covenant implied therefrom are not the same.

The vital and important difference between the two cases lies right there; for it is the nature of the representation which determines the nature and limits of the implied covenant. As already pointed out herein, the representation in the instant case was that the "park" was, or would be, a

public park. If it had been in fact a public park, no private right would ever have arisen—either before or after the vacating of the public right. An implied covenant that lands are or shall be a public park is no stronger than a similar express covenant; and even an express covenant to that effect is neither necessarily nor reasonably to be construed, and hence will not be construed, as a covenant that the park shall always remain a public park notwithstanding that the public authorities may subsequently vacate the public right. A representation or covenant that a tract is a public park naturally means that as such it is and will be subject to the usual conditions and vicissitudes to which public parks are ordinarily subject; and one of these is the possibility that it may at some time thereafter, if and when the proper authorities deem such action to be for the best interest of the municipality, be vacated.

In the *Lennig Case* it would seem (at *p. 609, top*) that the court found that the representation was not of such a nature as to give rise to public right—that the representation was not that the tract was a public park. In the absence of such a representation, obviously there was likewise an absence of a representation of possible future vacation and termination of public rights as a park.

To put the matter succinctly—in the instant case, the natural meaning of the representation, and hence of the implied covenant, was that the lot purchasers should have such rights (but no more) as they would enjoy if the park were a public park. In the *Lennig Case* the representation was different, and was (apparently) deemed greater in extent.

In the opinion of this court, none of the alleged private rights or encumbrances, specified by defendant, exist.

The present suit is not a suit to quiet title, however, and there still remains the question as to whether, notwithstanding that opinion, a decree for specific performance should be denied upon the ground of the possibility of defendant being "exposed to litigation." See *Smith* v. *Reidy, 92 N. J. Eq.* *586* (at *pp. 589 et seq.*), and the cases there cited.

The determination of the court of errors and appeals in

*Potter* v. *Lumsden, 93 N. J. Eq. 476,* would seem to indicate rather a relaxation of the strictness of the rule to be gathered from the language the opinions cited in *Smith* v. *Reidy, supra,* and this might have led to decree for specific performance in the instant case.

Since the writing of the earlier portion of this opinion, however, there has come to the attention of the court the determination in *Pound* v. *Pleister, 106 N. J. Eq. 101,* not cited by counsel on either side. Inasmuch as it deals with a contract of sale in the very same tract as the one in the instant case, and the circumstances are therefore identical, that determination must be deemed controlling in the instant case, and specific performance be denied.

No costs will be allowed to either side.