8 N.J. Super. 392 (1950)
73 A.2d 83
J. ADAM FRISCH AND FLORENCE B. FRISCH, HIS WIFE, PLAINTIFFS,
v.
RUTGERS VILLAGE, A CORPORATION OF THE STATE OF NEW JERSEY, AND FLANDERS HOLDING CO., INC., A CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 20, 1950.
*394 Mr. John T. Keefe, for plaintiffs.
Messrs. R.E. & A.D. Watson (Mr. Mortimer Eisner, of counsel), for defendant Flanders Holding Co., Inc.
Mr. David T. Wilentz, by Mr. Arthur J. Sills, for defendant Rutgers Village.
Mr. Arthur J. Sills, for defendant First Savings & Loan, &c.
HANEMAN, J.S.C.
The plaintiffs here seek to enjoin the defendant Rutgers Village from conveying, mortgaging or otherwise alienating certain lands heretofore conveyed to it by defendant Flanders Holding Company, Inc., in violation of certain restrictive covenants contained in a conveyance from Flanders Holding Company, Inc., to plaintiffs, and to impose restrictive covenants similar to those contained in said deed to plaintiffs upon the lands conveyed to Rutgers Village.
Defendants not only generally deny the material allegations of the bill concerning the restrictive covenants, but specially plead the statute of frauds.
The facts in connection herewith are as follows:
In the year 1932 Marcus Seidmann and Elizabeth Seidmann, his wife, conveyed four separate parcels of land to defendant Flanders Holding Company, Inc., by four separate *395 deeds of conveyance. These parcels were all situated in the City of New Brunswick, Middlesex County, New Jersey, and were commonly known as the Pennington Farm, Tunison Farm, Dewey Farm and Wilcox Farm. On August 1, 1946, the Flanders Holding Company, Inc., obtained title to an additional tract known as the Carpender Farm by deed of conveyance from Edwin R. Carpender, et al., Trustees. The five parcels were contiguous. Together they formed a tract of approximately 300 acres. At the time Flanders Holding Company, Inc., obtained title to these five tracts of land none of them was subject to any restrictive covenants.
The stock of the Flanders Holding Company, Inc., was divided equally between Marcus Seidmann and Jacob C. Lipman.
On September 7, 1938, a portion of the above entire tract, i.e., 16.1 acres, was conveyed to Jacob Lipman by deed, without any restrictive covenants. In September, 1938, the said Jacob Lipman conveyed two parcels of land out of this tract, one of which contained restrictive covenants.
In April, 1939, Jacob Lipman died, devising the remainder of 16.1-acre tract and bequeathing his Flanders Holding Company, Inc., stock to his three sons. On November 28, 1939, a map of this 16.1-acre tract entitled "Map of Edgebrook Subdivision 1," dated November, 1939, was filed in the office of the Clerk of Middlesex County by the sons of Jacob Lipman.
The said Lipman sons conveyed a number of other parcels of land in the 16.1-acre tract, subject to various restrictions and finally conveyed the balance to which they then held title to a straw man by a deed containing restrictive covenants. The latter subsequently reconveyed to them, subject to said restrictive covenants.
On August 3, 1940, Flanders Holding Company, Inc., conveyed a certain lot to plaintiffs. This deed read, in part, as follows:
"Being all of Lot No. 1 in Block 718 as shown on a map entitled `Map of Edgebrook, Section No. 1 & No. 2, situate in the City of New Brunswick, Middlesex Co., New Jersey, Scale 1"-60' May 1940.'
*396 "This conveyance is made, given and accepted subject to the following covenants and restrictions which shall be binding on the parties hereto and shall run with the land and shall be effective until the First of January, 2000.
"1  All lots in the tract shall be known and described as residential lots, and no structure shall be erected on any residential building plot other than one detached single family dwelling not to exceed two stories in height and a one or two car garage."
There follow some additional twelve numbered paragraphs providing in substance (1) front and side line building setoffs, (2) minimum area for lots, (3) type of building to be erected, (4) manner of enforcement of covenants.
On January 9, 1941, a map entitled "Map of Edgebrook Sections 1 and 2," dated March, 1940, was filed in the County Clerk's office of Middlesex County by Flanders Holding Company, Inc. This latter map showed the lands delineated on the prior map filed by the Lipman sons and contiguous land of about 18 acres owned by Flanders Holding Company, Inc., plotted into lots.
We are not here concerned with the 16.1-acre tract conveyed to Jacob Lipman except as it may demonstrate historically the background for any future neighborhood scheme adopted by Flanders Holding Company, Inc., and to explain the reference to Sections 1 and 2 in the Flanders Holding Company, Inc., map.
From September 18, 1939, to August 3, 1940, Flanders Holding Company, Inc., made eight conveyances to individual grantees of lots within the boundaries of "Section 2." The first deed contained no restrictive covenants. The next four of these conveyances, i.e., to Jennings, Schussler, Hartbower and Seng, contained identical restrictive covenants, except that the conveyance to Jennings contains this additional provision:
"Protective covenants shall also include the following: No building structure or materials shall be erected or placed within 20 ft. of an adjoining stream, park, or recreational area."
These restrictions differ from those contained in plaintiffs' deed in that they omit paragraph numbered 1 in said deed, *397 and in a number of other minor respects concerned principally with the phraseology and verbiage and not particularly the context.
The remaining three deeds thereafter contained the identical provisions found in plaintiffs' deed.
Subsequent to the date of plaintiffs' conveyance, up to and including January 14, 1942, Flanders Holding Company, Inc., made seven conveyances in Section 2 and an eighth conveyance on March 23, 1946, of premises not located in Section 2, with restrictions identical to those in plaintiff's deed.
From December 18, 1942, to date, Flanders Holding Company, Inc., made twelve conveyances in Section 2 containing the following or similar phraseology: "This conveyance is made, given and accepted subject to all covenants and restrictions open of record;" one conveyance of a lot in Section 2 containing no restrictions; one conveyance of a lot outisde of Section 2 containing no restrictions and one conveyance of a lot outside of Section 2 containing restrictions.
In the year 1944 Flanders Holding Company, Inc., caused a brochure to be printed which contained, in part, the following language:
"Edgebrook is the largest subdivision in the City of New Brunswick. Nearly three hundred acres of rich farm land will provide homes for more than three hundred families. A familiar comparison is the Livingston Manor section of Highland Park. However, Edgebrook is planned for Today's living and homes are built on extra large lots. It is not expected that Edgebrook will lose its country atmosphere. We have provided for this feature in our restrictions."

* * * * * * *
"Restricted areas for business have been set aside and as Edgebrook grows along with New Brunswick, stores and other services will become a part of it. The ultimate size of Edgebrook will provide a prosperous business for those who supply the daily needs of a large community."

* * * * * * *
"For many years the property consisted of four farms, each with dwelling, barns and outbuildings. The Wilcox family owned the farm at the Easterly end of the property. Later part of it was deeded to a relative named Pennington. Next to the Pennington farm was the Dewey farm, and at the Western end of the tract, the Tunison farm. *398 The old Wilcox farmhouse was built more than two hundred years ago, the Tunison house in 1861."

* * * * * * *
"The tract is a peninsula with the Raritan River on the North and East side and Lawrence Brook on the South and Southeastern side. The only land approach is at the Western end, near the New Brunswick Water Department pumping station."

* * * * * * *
"The minimum size lot is one hundred by one hundred and fifty feet. In places where a lot is located on the inside of a curved street, the frontage is a trifle less, but the back end of the lot fans out, sometimes to one hundred and twenty feet."
In addition, the brochure contained the map above referred to, showing Sections 1 and 2. On the cover of the booklet is shown a section of a map entitled "Suggested Revised Plan, Edgebrook, New Brunswick, N.J." This section encompasses more land than is exhibited on the map of Sections 1 and 2 filed by Flanders Holding Company, Inc. It delineates continuations of Pennington Road and apparently Voorhees Road, although neither are so entitled. It shows as well a "School Site" and other plotted lots in a portion of the 300 acres not included in the map of Sections 1 and 2.
A master plan on the cover shows "Edgebrook Road" and "Pennington Road" which are delineated on maps of Sections 1 and 2 and in addition "Wilcox Lane," which is not shown on said map. This cover also shows the balance of 300 acres.
On May 11, 1949, defendant Rutgers Village entered into an agreement to purchase the balance of the 300 acres from Flanders Holding Company, Inc., except for lands in Section 2 and some lands adjoining Section 2, title to both of which was retained by Flanders Holding Company, Inc. On October 24, 1949, Flanders Holding Company, Inc., conveyed this tract to Rutgers Village. The conveyance to Rutgers Village, although it contained no specific restrictive covenant, contained the following provision: "Subject to zoning ordinances and restrictions of record, if any."
Plaintiffs contend that the land conveyed to Rutgers Village should be subjected to the restrictive covenants contained *399 in their deed, as a part of an alleged neighborhood scheme or plan.
The testimony concerning representations by Flanders Holding Company, Inc., including literature published by it, subsequent to the date of the deed to plaintiffs, was admitted only for the purpose of corroborating the continuous existence of an alleged neighborhood scheme from the date of plaintiffs' conveyance. It had no probative value to establish that such a scheme was created at any time subsequent to the date of the conveyance to plaintiffs.
There is here present no express restrictive covenant which would limit plaintiffs' grantor in the use of its land outside of Section 2. If plaintiffs have any cause of action it must be by virtue of an implied covenant arising from the representations and agreements entered into immediately upon or prior to the conveyance to them on August 3, 1940. This is the pivotal date for a determination of the right to the injunctive relief demanded by plaintiffs.
Prior to assaying the testimony adduced, it is proper that some basic principles should be announced for guidance in the factual analysis.
A neighborhood scheme may be established by any one or more of three methods. In Scull v. Eilenberg, 94 N.J. Eq. 759, 121 A. 788, the court aptly described those methods as follows:
"The most complete way, of course, is by a reciprocal covenant, whereby the grantor covenants to insert, in apt language, like covenants in all deeds of his remaining lots or lands for the common benefit of all of his grantees and their assigns. Another way is for him to offer his lots for sale, and to sell them, on the representation that all lots will be conveyed subject to like covenants for the common benefit, in which case purchasers with notice or knowledge will be bound by the covenant. But, in the absence of either of these methods (as was the case here), the courts will only spell out such a scheme from a plan of lots and sales therefrom where all the deeds from the common grantor for the lots making up any particular neighborhood group of common benefit therefrom, are made subject to the common covenant. If, under these circumstances, the covenant is omitted from a deed of one lot so located that a violation on that lot of the provisions of the covenant would deprive the other lots of the benefit to *400 be derived by them from the common observance of the restriction, there is, in the absence of knowledge or notice of the scheme on the part of the grantee in the deed for such omitted lot, a failure to make out a neighborhood scheme, at least as to that lot and as to such other lots as would lose the benefit of the scheme if it were violated on the lot not subjected to the covenant."
Generally, restrictions upon the use of land are not looked upon with favor by a court of equity and such restrictions are always to be construed strictly. Ambiguities and uncertainties are resolved in favor of the owner's unrestricted use of his land. To establish a restrictive covenant, express or implied, the proof must be clear and satisfactory. Underwood v. Herman & Co., 82 N.J. Eq. 353, 89 A. 21; Paff v. Margerum, 103 N.J. Eq. 74, 142 A. 6; Bright v. Forest Hill Park Development Co., 133 N.J. Eq. 170, 31 A.2d 190; Majeski v. Stuyvesant Homes, Inc., 140 N.J. Eq. 460, 55 A.2d 33.
Where a restriction is raised by implication of law, its extent will naturally be confined within the narrowest scope possible under the circumstances. Radey v. Parr, 108 N.J. Eq. 27, 153 A. 628; Schweitzer v. Adami, 110 N.J. Eq. 193, 159 A. 529.
It is necessary first to ascertain whether a neighborhood scheme which would encompass all of the lands owned by Flanders Holding Company, Inc., at the time of the conveyance to plaintiffs was effectively created.
Plaintiffs rely heavily upon Lennig v. Ocean City Association, 41 N.J. Eq. 606, 7 A. 491, to sustain their contention that the lands in question were restricted by implication.
In Radey v. Parr, supra, the court held that the Lennig case went no further than to adjudge that where conveyances of lots were made by reference to a filed map and that map "interpreted in the light of the objects of the association as avowed in its articles of incorporation," indicated that the territory there in question was not to be divided into lots, then there arose a restrictive covenant by implication. The court, in Radey v. Parr, supra, further held as follows:
*401 "The implied covenant there declared was primarily based upon the map with reference to which conveyances had been made, as was the implied covenant suggested in Booraem v. North Hudson County Railway Co., 40 N.J. Eq. 557, in analogy to which the Lennig case was determined. That map, in the Lennig case, clearly set apart the disputed territory to a restricted use which, by necessary implication, inured to the benefit of purchasers of lots with reference to that map. The contrast between purchasing lots with specific reference to that filed map, and purchasing with specific reference to a filed map which negatived any suggestion touching restricted use is apparent, since the claim of implied covenant in the present case must be based upon the sign on a distant part of the tract containing the words `Exclusive Locations' and the added words `convenient, reasonable and attractive,' and so far as that sign and the parol representations may be thought to impose upon the tract an implied covenant for a restricted use, such implied covenant would necessarily be raised in direct conflict with the terms of the conveyance which was with reference to the unrestricted filed map to which it referred. I find no justification in principle or authority for extending the doctrine of implied covenants beyond the scope of the cases above referred to."
The rationale and doctrine of the Radey case was approved by the Court of Errors and Appeals in Droutman v. The E.M. & L. Garage, Inc., 129 N.J. Eq. 545, 20 A.2d 75.
Keeping in mind the foregoing basic legal dogma, let us examine the testimony. The only aid we have as to the representations which were made to plaintiffs at or before they obtained title is to be found in the testimony of J. Adam Frisch. At the time he purchased his lot he states that he was shown a "throw-away paper" which did not contain any written restrictions but which was a map allegedly showing sections "1" (Lipman property) and "2" (Flanders Holding Company, Inc., property) and the undeveloped balance of some 270 acres owned by Flanders Holding Company, Inc. The only portions of this map which showed a plotting into lots were sections 1 and 2. At this time he alleges that Leonard Lipman, an officer of Flanders Holding Company, Inc., advised that the entire 300 acres would be subjected to restrictions similar to those of plaintiffs. For some years after he purchased his lot there was a direction sign at the entrance to the developed portion bearing the legend "Edgebrook, New Brunswick's leading development."
*402 Not only does Leonard Lipman deny the statements attributed to him, but he and the engineer of Flanders Holding Company, Inc., deny that any such map as described by J. Adam Frisch was ever printed or circulated.
The land here sought to be subjected to the restrictive covenants is not only not shown on the map to which reference is made in plaintiffs' deed, but is not shown as plotted nor as restricted on any filed map.
It seems clear that as the Lipmans and Flanders Holding Company, Inc., progressed with their sale and development of Sections 1 and 2 their ideas on restrictions crystallized. It may well be that a neighborhood scheme was, in fact, established in Section 2. We are, however, as above stated, only concerned with the lands of Flanders Holding Company, Inc., conveyed to Rutgers Village as they may be affected by a restrictive covenant resulting from implication at the time of the conveyance to plaintiffs.
The sole evidence produced at the time of trial were the alleged oral representations or agreements of Flanders Holding Company, Inc. The attempted proof of restrictive covenants by parol testimony alone is violative of the statute of frauds. There is no proof of any actual fraud on the part of Flanders Holding Company, Inc., in the sale of the realty to plaintiffs. In the absence of the proof of any such fraud, defendants are not estopped from the defense which the statute of frauds accords them. Radey v. Parr, supra; Droutman v. The E.M. & L. Garage, Inc., supra.
The plaintiffs have as well failed to adduce any proof that the lands, the free alienation of which is here sought to be restricted, were shown on any filed map. They have admitted that if there were any restrictions on the lands conveyed to Rutgers Village, there is no proof that the latter had actual knowledge thereof.
In Beattie v. Howell, 98 N.J. Eq. 163, 129 A. 822, the court said, at page 166:
"This makes it unnecessary to deal at length with the points advanced by the complainants as evidence of a general scheme having *403 existed at the time they and each of them purchased. It may be that a gross fraud was practiced upon them by others, but there is nothing in the bill to show that the defendants, or either of them, even had any knowledge thereof, not to mention part therein. They are not responsible for fraudulent inducements held out by others to persuade the complainants to buy their land, even though the others were the officers and agents of the common grantor of all the parties, but respecting lands other than those purchased by the defendant Willis K. Howell."
It is here held, therefore, that plaintiffs have failed to sustain the burden of proving an agreement by Flanders Holding Company, Inc., to create a neighborhood scheme encompassing the lands conveyed to Rutgers Village at the time of the conveyance to plaintiffs.
It may be argued, as plaintiffs have, that at least at the time of the issuance of the brochure, Flanders Holding Company, Inc., had conceived a plan for a neighborhood scheme. It is to be noted that this booklet was not issued until 1944, some four years subsequent to the date of plaintiffs' conveyance. We are concerned only with the existence of an agreement on or before August 3, 1940. Whether Flanders Holding Company, Inc., had adopted a neighborhood scheme which included the lands conveyed to Rutgers Village subsequent to this date is of no moment in determining the issue raised by these plaintiffs.
Since the original grantor, Flanders Holding Company, Inc., did not bind itself to impose restrictions on the land remaining in its hands at the time of the conveyance to plaintiffs, they, having no right of action against it, have no right of action against the subsequent grantee, Rutgers Village. Leaver v. Gorman, 73 N.J. Eq. 129, 67 A. 111; Clarke v. Kurtz, 123 N.J. Eq. 174, 196 A. 727; Bright v. Forest Hill Park Development Co., 133 N.J. Eq. 170, 31 A.2d 190.
The complaint will be dismissed.