Complainant is a practicing attorney who has been at the bar of this state for 23 years. During that time he has specialized in matters involving real estate law and has been particularly active in the examination of titles to real estate. He has represented several building and loan associations. He was one of the organizers of the defendant corporation and was a director and its counsel until April, 1946.
Over the course of the years complainant has built up what has been referred to as a title plant. This plant consists of files containing abstracts of the title to various large tracts of real estate which became the subject of development and division into building plots. Such abstracts of title are referred to as master searches. In addition to the master searches, there are abstracts of the title to various smaller plots within the large tracts. These latter abstracts resulted *Page 2 
from continuations of the master searches. The files also contain affidavits, letters and memoranda of various sorts relating to the history of the titles and the steps taken to remove or explain objections to their validity. All of these records are indexed and cross-indexed in such a manner as to make them readily available for use in connection with the examination of the title to plots within the large tracts.
As complainant's files grew and the number of abstracts increased, the time and effort required to be expended by the complainant in the examination of titles became less and the profit from title searching increased. At the time this litigation started, complainant had some five thousand abstracts of title in his files. Complainant's association with the defendant started in 1927, when he joined with others in its organization. He continued as a director and as counsel for the defendant corporation until April, 1946, when the relationship came to an abrupt end. In the latter part of that period, the defendant enjoyed a very rapid expansion. In 1940 it had assets of $600,000. Thereafter its assets increased at the rate of about $2,000,000 a year until at the present time, they amount to about $15,000,000.
As counsel for the defendant, Coven, the complainant, was charged with the responsibility of examining and approving the title to properties offered for mortgage loans. He drew the necessary instruments in connection with the transactions, attended the closing and disbursed the money. To assist him, Coven had a staff of lawyers, title examiners and stenographers, all of whom he paid. The business was conducted in Coven's office in the City of Paterson where the defendant had a room. Defendant also maintained a small office in the Borough of Fair Lawn.
In 1940, the defendant erected a building in Fair Lawn and since then has conducted its business from that location. Coven moved the bulk of his files and most of his employees to the new building. He did not pay rent, nor for telephone service, but in other respects maintained a separate establishment. Coven received no salary from the defendant. The cost of a title examination was the subject of negotiation between Coven and the client, there being no set fee. *Page 3 
Prior to 1940, among the papers delivered to the defendant by Coven, when a mortgage transaction was completed, was an abstract of title. After 1940, a certificate of title was given in lieu of an abstract. Coven testified that at that time the volume of business became so great that the furnishing of abstracts became a considerable burden. Accordingly Coven discussed the matter with the state examiners who assured him that for their purposes a certificate setting forth the condition of the title would be satisfactory. Thereafter Coven discontinued the practice of furnishing abstracts of title to the defendant and, instead, provided certificates of title.
Dusenberry, president of the defendant corporation, testified that Coven came to him and said that, due to the increase in business, it was becoming impossible for him to furnish abstracts of title with every loan. He said that he, Coven, had conferred with the examiners and had been assured that a certificate would be satisfactory. Coven, then, requested his, Dusenberry's, consent to the change. Dusenberry says that he told Coven the change would be satisfactory provided Coven had his files always available in case a question arose in connection with some title, and provided, further, that abstracts would be furnished eventually in every case. Dusenberry said also that it was understood that Coven's notes on titles were to remain with the defendant until the abstracts were furnished. Further on in his testimony Dusenberry stated that he told Coven that the new arrangement would be satisfactory, provided the defendant had access to Coven's notes. And still later, Dusenberry testified that he informed Coven that certificates could be furnished provided Coven would furnish abstracts when, by reason of the foreclosure or sale of a mortgage, an abstract was required. Coven denied that any conversation upon the subject was had with Dusenberry. It further appeared from the testimony that up to the time the parties discontinued their relationship, various files had been closed and placed in dead storage without an abstract having been furnished or requested. And Dusenberry admitted that whenever an abstract was requested it was furnished by Coven. *Page 4 
Both Coven and Dusenberry were evasive and contradicted themselves upon occasion. In the main, however, they are sufficiently in agreement to make possible a determination as to what was the understanding. I am of the opinion that the defendant was willing to have Coven furnish a certificate in lieu of an abstract of title, and I am satisfied that Coven agreed to furnish an abstract when, by reason of the sale or foreclosure of a mortgage, an abstract would be required. And, further, I am of the opinion that at no time was there any understanding that Coven's files should become the property of the defendant or that they should be held by the defendant until abstracts were furnished. At the time the understanding was reached the association between Coven and the defendant was very friendly, and, so far as appears, no one anticipated any change in the relationship. Coven had his establishment in defendant's building and his files were available for inspection. There was no reason for the understanding to be other than it was.
In April, 1946, the relations between Coven and the defendant became strained. During the night of April 9th, 1946, the defendant through its president, Dusenberry, caused Coven's files to be removed from his office and placed in the defendant's vault. What caused the defendant to take this drastic step does not appear. When Coven and his employees arrived the next day they were refused access to the files. Coven's subsequent demands for the return of the files was refused. Negotiations for a settlement of the difficulties having failed, this bill was filed. It seeks the return of the files and indexes.
Among the files removed, in addition to those bearing upon matters in which the defendant was interested, were files pertaining to cases with which the defendant had no concern. Coven's private papers were taken as were the filing cabinets, concededly his property. At the final hearing defendant admitted that it had no claim to any files antedating 1941. It conceded that Coven was entitled to the cabinets, indexes and all other files not bearing upon the business of the defendant.
It seems unnecessary to argue at length that the documents *Page 5 
here in question are properly the subject of equitable replevin. They represent the result of years of research into the history and title to property in the section of Bergen County in which the parties conducted their business activities. To a man engaged in title searching they are invaluable. Their loss could not be the subject of adequate monetary compensation. They are clearly the property of Coven. Defendant has failed to justify, in any way, their removal and retention. Complainant is entitled to have his property returned to him. Pattison v. Skillman, 34 N.J. Eq. 344; Motley v. Darling, 86 N.J. Eq. 185; IndustrialElectronics Corp. v. Harper, 137 N.J. Eq. 171; Burr v.Bloomsbury, 101 N.J. Eq. 615. As a condition to the return of the files, however, the complainant should agree to furnish an abstract of title in the event that the sale or foreclosure of one of the mortgages with which complainant was concerned should make such an abstract necessary.
I shall advise a decree in accordance with the above.