CHARLES SIMKIN & SONS, INC., a corporation of the State of New Jersey, Plaintiff-Appellant in 13,423,

v.

Frederick MASSIAH, Defendant-Appellant in 13,422,
and
City of Trenton, Defendant.

Nos. 13422, 13423.

United States Court of Appeals Third Circuit.

Argued March 9, 1961.

Decided April 13, 1961.

Louis B. LeDuc, Camden, N. J. (Kenneth J. Dawes, Trenton, N. J., on the brief), for appellant Massiah.

Allen Ravin, Perth Amboy, N. J. (Arthur J. Sills, Wilentz, Goldman, Spitzer & Sills, Perth Amboy, N. J., on the brief), for appellant Charles Simkin & Sons, Inc.

Before GOODRICH, McLAUGHLIN and FORMAN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The first of these two appeals denied plaintiff's (Simkin's) application for an interlocutory injunction to compel defendant (Massiah) to withdraw a lien claim filed by him. The second denied defendant's application for an interlocutory injunction against plaintiff's continued possession and use of defendant's equipment and tools. Both arise out of the following facts.

In April 1959, plaintiff entered into a contract with the City of Trenton, New Jersey, for the construction of a Sewage Treatment Plant at Duck Island, Tren-

ton. Pursuant to the requirements of N.J.S.A. 2A:44–143 and 144, plaintiff provided performance and payment bonds with sureties in the amount of $3,752,-714.00. These bonds were conditioned as prescribed by N.J.S.A. 2A:44–144, and were in the required form of N.J.S.A. 2A:44–147.

Plaintiff, by written agreement, subcontracted the concrete work to the defendant. During the course of performance of the subcontract, various disputes arose between the parties, and on June 10, 1960, the plaintiff gave notice of termination for the alleged default of the defendant. On July 12, 1960, defendant filed with the City of Trenton, a notice of lien claim in the amount of $413,110.-60. On July 13, 1960, the plaintiff took possession of defendant's tools and equipment and assumed performance of the concrete work.

Ten days later, plaintiff instituted an action in the Superior Court of New Jersey and inter alia secured an order directing the defendant to show cause why the defendant should not " * * * waive and release the Notice of Lien Claim * * * " and why the City of Trenton should not be directed to refrain from withholding payments otherwise due plaintiff under the contract. Upon the requisite showing, the defendant removed the case to the Federal District Court. Defendant filed an answer and counterclaimed for sums allegedly due under the contract, breach of contract, conversion of the tools and equipment and injunctive relief against the plaintiff's continued use and possession of them. Thereafter, plaintiff secured an Order to Show Cause asking for the same injunctive relief that was originally sought in the New Jersey Superior Court. Defendant moved by similar proceedings to obtain possession of the tools and equipment seized and used by the plaintiff. The District Court denied both petitions.

## I.

Plaintiff's right to have the defendant's notice of lien claim removed is based on the waiver provision in the subcontract which reads:

"22. The Subcontractor hereby waives and releases any and all liens or right of lien under any applicable State or Federal law which he now has or may hereafter have against any fund, building, structure and land in connection with which labor shall be performed and materials furnished under this Contract, and further, expressly agrees not to file or place on record any Mechanic's notice of intention, stop notice or lien claim of any kind against any such fund, building, structure and land."

The terms of this clause are clear. It is a waiver by the defendant of any right to assert or file " * * * *any and all liens or right of lien under any applicable State or Federal law * * *.*" (Emphasis supplied). The defendant voluntarily agreed to the waiver and is bound by its terms. Under New Jersey law such provisions are valid and enforceable. Mitchell v. Wrightstown Community Apartments, Inc., App.Div. 1949, 4 N.J.Super. 321, 67 A.2d 203; City Hall Building & Loan Ass'n of Newark, N. J. v. Florence Realty Company, Ch.1932, 110 N.J.Eq. 12, 158 A. 506. And this is true though the person seeking to invoke the waiver is the party in default. Mitchell v. Wrightstown Community Apartments, Inc., supra. In the Mitchell case, supra, the plaintiff urged the proposition that if the defendant breached the contract, the defendant could not assert the contractual waiver of lien. The court unequivocally held to the contrary, stating at page 325 of 4 N.J.Super., at page 205 of 67 A.2d:

"The plaintiff contends that the defendant's breach of the contract, as alleged in the complaint and quoted above, estops the defendants to deny plaintiff's right to a lien. In support of this novel proposition, no authorities are cited and certainly plaintiff does not show a situation within the usual definition of estop-

pel. Pom.Eq.Jur. § 805. The lien of the contractor comes into play only upon the owner's breach of the contract, for if the owner pays the contractor what falls due from time to time, the lien is unimportant. *The waiver of the lien means that, in case the owner fails to pay, the contractor will assert no lien on the land but will rely upon the owner's general credit. Clearly, the defendants' failure or refusal to pay does not estop them from asserting the waiver of the lien.*" (Emphasis supplied).

■ The holding in Mitchell is applicable to the Simkin suit. Regardless of which party is found to have breached the contract at the trial that will follow, the plaintiff is entitled to enforce, and the defendant is bound by, the contractual waiver of lien.

The district court as one of its reasons for denying plaintiff's petition stated [186 F.Supp. 233]:

"* * * N.J.S.A. 2A:44–130 expressly provides that the funds to which a lien has attached may be released and paid to the contractor by the municipality upon the filing with the latter of a bond in double the sum of all claims filed under the provisions of the statute against the contract or the funds due or to grow due thereunder, and conditioned for the payment of such sums as may be adjudged to be due under such claims."

To follow this course, the plaintiff would be required to post a bond of $826,-221.20. This would be over and above the $3,752,714.00 performance and payment bond already posted. The performance bond is guaranteed by two surety companies and is specifically designed to insure payment of "* * * all lawful claims of subcontractors, materialmen, laborers, persons, firms or corporations for labor performed or materials * * * furnished, used or consumed in the carrying forward, performing or completing of said contract * * *." N.J.S.A. 2A:44–147. In addition, the plaintiff has posted a lien bond of $218,000.00, which was necessary because of the defendant's failure to pay his materialmen and suppliers. On the other hand, the defendant has advanced no valid reason for sustaining his contention that the lien claim should be allowed to remain filed. In view of these most substantial assurances of payment already in existence, equitable considerations do not warrant placing this additional burden on the plaintiff.

As a second reason for denying plaintiff's petition, the district court stated [186 F.Supp. 233]:

"No proof has been presented to me excluding the possibility that Massiah may have a right to assert some lien against the funds in the possession of the municipality upon some of the items of his lien claim, despite the waiver of lien set forth in the subcontract between him and the plaintiff."

We disagree. Our examination of the items claimed by the defendant in the Notice of Lien claim satisfies us that any claim asserted therein is covered by the comprehensive language of the waiver provision in the contract. All the lien claims arise out of the work done pursuant to the subcontract.

Accordingly on plaintiff's appeal, the judgment of the district court will be reversed and the case will be remanded with directions to enter an interlocutory injunction requiring the defendant to waive and release the Notice of Lien claim filed with the City of Trenton and to execute such instruments as may be required by the City of Trenton to discharge the filed notice.

## II.

The district court denied defendant's petition for an injunction against plaintiff's continued possession and use of defendant's equipment and tools. We agree with the district court's conclusion.

■ The relief sought by the defendant is in the nature of equitable replevin. The basis for invoking this type of relief is well-settled.

" * * * A court of equity may compel the delivery of a specific chattel wrongfully withheld, notwithstanding replevin or trover may lie therefor, but only in cases where damages would be an inadequate redress for the injury, for instance, as in the case of heirlooms, and other articles incapable of being replaced, which are prized for their associations rather than for intrinsic value. Burr v. Bloomsburg, 101 N.J.Eq. 615 [138 A. 876]." Spoor-Thompson, &c., Co. v. Bennett Film Laboratories & Elasticap Co., Ch.1929, 105 N.J.Eq. 108, 115, 147 A. 202, 205.

To support the assertion that the tools and equipment are a proper subject for equitable relief, the defendant has cited several cases. In no way do they support his position. In all of them the chattels involved were "unique" and could not be replaced by purchase on the open market. E.g., Coven v. First Savings and Loan Ass'n, Ch.1947, 141 N.J.Eq. 1, 55 A.2d 244 (an attorney's title plant); Redmond v. New Jersey Historical Society, E. & A. 1942, 132 N.J.Eq. 464, 28 A.2d 189 (Stuart's portrait of Captain Lawrence); Burr v. Bloomsburg, Ch.1927, 101 N.J. Eq. 615, 138 A. 876 (a family heirloom). See also, Pomeroy, Equity Jurisprudence §§ 185, 1402 (5th ed. 1941); Restatement, Contracts § 361; 5 Williston on Contracts § 1419 (Rev. ed. 1937).

■ In this appeal, the tools and equipment are not "unique" but are standard-made and readily available on the open market. Items such as electric fans, electric drills, shovels, boots, wheelbarrows, rakes, scrapers, wire cutters, etc., are not within the category of personalty which affords a proper basis to invoke the remedy of equitable replevin.[1]

■ Apart from the foregoing, there is an additional reason why defendant's petition should be denied. As a prerequisite to the issuance of an interlocutory injunction, the moving party must show a clear right to relief. There must be no disputed issues of fact. Citizens Coach Co. v. Camden Horse R. R. Co., E. & A. 1878, 29 N.J.Eq. 299, 306; Ferraiuolo v. Manno, 1948, 1 N.J. 105, 108, 62 A.2d 141; Anders v. Greenlands Corp., Ch. 1954, 31 N.J.Super. 329, 339, 106 A.2d 361. An examination of the allegations of both parties in the pending appeal shows the presence of several material fact questions.

The plaintiff advances two premises to support its right to possession of the tools and equipment. First, it claims that at one of the conferences between the parties, the defendant orally assigned them to it. The defendant explicitly denies that any assignment was ever made. This assertion of the right of possession by the plaintiff and the denial thereof by the defendant, crystallizes the issue of fact, which in turn precludes an interlocutory injunction.

■ Second, the plaintiff alleges that under the contract documents, upon the declaration of default, plaintiff has the right to the possession of the tools and equipment. In support thereof, plaintiff cites paragraph 7 of the subcontract and paragraph LVI of the main contract. Paragraph 7 of the subcontract provides:

"The Subcontractor shall comply with all the terms of the General

---

1. In his brief the defendant argues: "But * * * [defendant's] remedy may not be measured by the loss of wheelbarrows and concrete mixers. It is the sum total of what was taken, embracing as it did the defendant's entire working tools and equipment, that lends significance and invokes the remedy."

This misconceives the theory that invokes equitable remedies in the case of chattels. *It is not a quantitative evaluation.* The reason for the granting of equitable relief is the inadequacy of the remedy at law. "Such a case is established, where a chattel * * * is unique, or not purchasable in the market." Williston on Contracts § 1419, p. 3954 (Rev. ed. 1937). "The equitable jurisdiction in these cases really rests upon the fact that the only relief which the plaintiff can have is possession of the *identical* thing, and this remedy cannot *with certainty* be obtained by any common-law action." Pomeroy, Equity Jurisprudence § 185, p. 265–66 (5th ed. 1941).

**30**

conditions made part of the General Contract Documents and of all the other terms and conditions of any of the other General Contract Documents insofar as applicable to the work of the Subcontractor, and the Subcontractor hereby agrees that the Contractor shall have the same power as regards terminating this Subcontract that the Owner may exercise over the Contractor under any of the provisions of the General Contract Document."

The language of this provision gives the plaintiff the same powers in terminating the subcontract that the City possesses in the main contract. Article LVI of the main contract provides that upon the declaration of default:

" * * * the City shall thereupon have the power * * * to * * * take possession of and use any or all plant, tools, appliances, equipment, supplies, property and materials as they may find upon the work, and procure or cause to be procured, by contract, or otherwise, all plant, tools, appliances, equipment, supplies, property and materials for the completion of the same, and charge the whole expense of the completion of the work, or part thereof, to the Contractor."

Since the City could seize the plaintiff's tools and equipment on plaintiff's default, the plaintiff can likewise seize the defendant's tools and equipment on defendant's default. The incorporation of the main contract into the subcontract by paragraph 7 binds the defendant to its terms. Frommeyer v. L. & R. Construction Co., 3 Cir., 1958, 261 F.2d 879, 882, 69 A.L.R.2d 1040. Necessarily, the right of seizure is dependent upon whether the defendant defaulted in performance of the subcontract. That event gives the provision operative force. Since the plaintiff asserts that the defendant was in default, and the defendant claims that he was not, the conflict must be determined at the trial on the merits. Regardless of the ultimate decision of this issue,

its presence at this preliminary stage of the proceedings bars allowance of an interlocutory injunction.

Therefore on the defendant's appeal, the judgment of the district court will be affirmed.